Marshall, Ch. J.,
 

 delivered the, opinion of the court. — The court has endeavored to bestow on this cause the attention to which it is alike entitled, by its own importance, by the situation of one of the parties, who is a stranger to our language and our laws, and by the ability and zeal with which it has been argued at the bar.
 

 The action claims from the defendant the value of three cargoes of tobacco, purchased by him as the agent of the plaintiffs, which were captured on a voyage to Europe, and condemned as prize. The foundation of the claim is, that he deviated from the • instructions which were given for the government of his conduct, and is, therefore, liable for the loss which has been sustained.
 

 That an agent is bound to pursue the orders of his principals, and is answerable for any injury consequent on his departing from them, however fair may have been his motives for such departure, is a plain principle of law, which has not been drawn into question; and the only inquiry in this case is, has the defendant obeyed or deviated from his instructions ? The circuit court was of opinion, that they sanctioned his conduct, and it is the propriety of that opinion, which is now to be reviewed in this court.
 

 It depends on the true construction of the letter of the 27th of January 1798, written by Bernardo Lacosta, on behalf of the plaintiffs, of which Juan Alonzo Menendez Conde was the bearer, and on the testimony which is stated in the bills of exceptions. *This letter introduces Menendez as the p.,. agent of the plaintiffs, who were principally concerned in the importa- *• tion of tobacco into Spain, and declares a confidence that the defendant will embrace the business as his own, and execute it with his wonted attention.
 

 After some general observations, which relate to the proposed transaction, and which seem to be founded on the idea that the defendant and Menendez are to be associated in the business, the letter becomes more definite. The writer says, “ with this, the said Mr. Menendez takes an order for 20,000 quintals (of tobacco) to be shipped for this place, in seven or eight vessels, and in not less than six, under which condition the insurance will be made here. You will take care to seek captains of fidelity, American born, and that all the crews conform to the most rigorous ordinances. For greater clearness the shipments
 
 (las expediciones)
 
 will be made according to the following formalities : 1st. You will lade the vessels in your own name, stating that they are on your own account and risk, as an American citizen, and consign, them,”
 
 *264
 
 &c. This instruction is followed by ten others, which seem principally designed to conceal the real character of the cargoes, and to facilitate their escape from cruisers. At the close of these instructions, the following words are added : “ I refer you to that which the bearer will communicate to you verbally, respecting this business, who is sent on purpose to superintend the shipment
 
 (va solo para presenciar la
 
 expedición), and you will, upon the whole, act for the advantage of the interested, taking care to keep this business a secret, in order to prevent a rise in your market, and its being known that it is for foreigners, but always that it is on your own account as an American citizen.”
 

 In the execution of this commission, the defendant shipped two cargoes, the one on board a Danish and the other on board a Moorish vessel, each of which was captured and condemned as prize, the one by the French, and *4.411 ^e other by the English. *These shipments were made with the full J approbation of Menendez, and it is in proof, that American vessels were not, at the time, to be procured.
 

 Before the order was completed, the government of the United States adopted such measures, for repelling the hostile aggressions of France, as to justify an opinion, that open and declared war between the two nations would soon take place. Under the impression of these measures, Mr. Menendez considered the American name as no longer affording a neutral character to the cargo, and directed it to be shipped on account and risk of Charles Longhy, of Genoa, who was a correspondent of the plaintiffs. These instructions were complied with.
 

 The tobacco, so shipped, which came safe, was received without complaint ; but a large quantity, shipped in the Henrietta, was captured by a British cruiser, carried into Halifax, and there condemned as prize. For the price of these three cargoes, this action is brought. The inquiry respecting the two first, will rest both on the instructions given to the defendant, and on the power of Menendez : that respecting the last, rests solely on the power of Menendez.
 

 It is alleged, that the orders under which the defendant acted, enjoined him to employ only American vessels, and that in employing those of other neutral powers, he violated these orders. But there is certainly not one syllable in the letter, which contains any instruction to the defendant, relative to the employment of vessels, or which confines the transportation of the tobacco to be purchased to American vessels. The court thinks it a fair construction of the letter, that full powers, in this respect, were confided to Menendez, and that Barry might counsel with him, but was to comply with his directions. Menendez is declared to be the agent of the plaintiffs, and the full extent of this term is not limited in any part of the letter. He brings with him an order for 20,000 quintals, to be shipped in six, seven or eight vessels, under which condition the insurance is to be made in Spain. *4421 *These are not instructions to Barry ; they are communications to him of the instructions given to Menendez, so far as was necessary for his understanding the views of the plaintiffs, and facilitating those views, under the authority of Menendez. The order, of which Menendez was the bearer, was for himself; and the degree of aid expected from Barry, is described in the letter. Barry might have been unable, or unwilling, to undertake the business. In any event of that kind, the enterprise was not, cer
 
 *265
 
 tainly, at an end ; but Menendez might obtain other assistance. From the nature of the case, therefore, as well as from the expression of the letter, the order was in the possession and power of Menendez, the agent, to whom directions relative to the shipment of the tobacco, in a certain number of vessels, had been given, and who is declared to have been sent to America, for the purpose of superintending those shipments. Having made this explanation of the business confided to Menendez, the letter adds, “ you will take care to seek captains of fidelity, American born,”
 
 &o.
 
 Those inquiries, Barry, an American merchant, could make much more successfully than Menendez, a foreigner, and therefore, was directed to make them. But respecting the character of the vessel to be employed, no agency, on the part of Barry, was necessary, further than to comply with such directions as he might receive, and no directions respecting the vessels to be employed were given him, because those directions were given to Menendez. The instructions to Barry, to seek for American captains, are founded, not upon instructions to employ American vessels, which were given to him, for none such were given, but upon the instructions which were given to Menendez. They are founded on the idea, that American vessels would be employed ; but as circumstances might render the employment of them ineligible, it was reasonable to suppose that some discretion would be allowed to Menendez in this respect; accordingly, the private instructions, as stated in the bill of exceptions, only directed him to employ neutral vessels.
 

 The idea that the power on this subject was completely in Menendez, and not in Barry, is confirmed, by observing, that in the extended and minute rules, which are, for greater clearness, laid down for his government respecting the transportation of the tobacco, not one syllable *is said concerning the character of the vessels in which it was to be shipped, a direction which would certainly not have been omitted, had the subject not been confided to the general agent. It is also apparent, from the letters in the bill of exceptions, that the subject was so understood by both Menendez and Barry. When to these circumstances, it is added, that American vessels were sought for at the time, and could not be obtained, it seems to the court perfectly clear, that with respect to the tobacco shipped in the Moorish and Danish vessels, the conduct of the defendant, being sanctioned by Menendez, was free from all exception.
 

 The claim for the cargo of the Henrietta stands on stronger ground, because the defendant was explicitly instructed to lade the vessels in his own name, stating that the cargoes were shipped on his own account and risk. On this part of the case, the defendant must seek for a justification in the full powers of Menendez, to vary the orders given to him. These orders have been said to be free from all obscurity, and in themselves, they unquestionably are so. Barry could not have doubted the positiveness of his instructions, to ship the tobacco as his own property. The defence he sets up is, that he was justified in conforming to the directions of Menendez, varying those instructions.
 

 An examination of this defense leads to a still more critical investigation of the letter of the 27th of January. It has been already observed, that Menendez is stated in the letter, introducing him to Barry, to be the agent of the plaintiffs, and the bearer of their orders for the tobacco, which was to be purchased. As it was not unreasonable to expect, that a person,
 
 *266
 
 crossing the Atlantic in- this character, would have some discretionary power to change instructions, with a change in circumstances, so as to be enabled to adapt his conduct to those circumstances, ready faith would be given to all expressions which would convey this idea; and if no such power was intended, no expressions ought to have been used, which could excite and cherish the idea.
 

 The rules stated to Mr. Barry, as those by which his conduct would be *444.1 governed, are declared to relate to the *part he was expected to take in the “
 
 expedition”
 
 which the court translate transportation, or conveyance, of the tobacco to Europe. One of these being, that the tobacco was to be shipped in his own name, it follows, that this part of the subject was included in the Spanish term “
 
 expedition.”
 
 All these rules conclude with a reference to verbal communications, to be made by the agent himself, who is expressly .declared to go to the United States, for the sole purpose of attending to this very part of the transaction,
 
 “ va solo para presenciar la expedition.”
 
 This reference to the verbal communications of Menendez, unqualified by any restriction whatever, is a declaration of complete confidence, placed, at least, in his veracity, by the plaintiffs, and is a full authority given by them to Barry, to credit the representations which he should make. How else is it to be understood ? What right could Barry have to say to those who had referred him to the verbal communications which their agents should make to him on a particular subject, that he did not believe those communications ?
 

 It is argued, that although no limitation is expressed to the credit which Barry was to give to the representations of Menendez, yet it must be necessarily understood, that he could not change those things which were expressly directed ; that the verbal communications referred to, were to be conformable to, not subversive of, the written instructions; that on the idea of a power to alter the written instructions, it was useless to give them, and was only necessary to send out Menendez with a full authority to govern the whole transaction.
 

 But in the course of human affairs, it is not unusual, for a principal to give, in detail, his ideas of the line of conduct to be observed by his agent, and yet to allow a departure from that line of conduct, under particular circumstances. It would not have been extraordinary, had these rules for the conduct of Barry, been followed by a declaration, that, in a total change of circumstances, as in' the event of America’s becoming a belligerent, he was to ship the tobacco, not as American, but as neutral property. Had Barry been the sole agent, this right to exercise his discretion, if intended *441? 1 *° P^ced in him, would have *been mentioned in his letter. But -1 Barry was neither the sole nor the principal agent. He was known to the plaintiffs only by recommendation, and while he was employed, because an American merchant could make the proposed purchases to greater advantage, and because an American name was required to cover the property, Menendez was the confidential agent, known to and trusted by the plaintiffs, who brought with him the order for the purchases, and came on purpose to attend to the conveyance of the tobacco to Europe. In the instructions to Menendez, therefore, would any discretion relative to the transportation of the tobacco be found, and it was enough, that Barry was referred to his verbal communications.
 

 
 *267
 
 The words which follow the reference to the verbal communications of Menendez, though not those which decide the opinion of the court, are not absolutely unimportant: they are, “and you will, upon the whole, act for the advantage of the parties interested.” To what do these words, “ upon the whole,” refer ? Unquestionably, to the verbal communications as well as to the written instructions. They were both to regulate the conduct of the defendant.
 

 The caution which follows those words, is understood by the counsel for the plaintiffs, to limit their extent, and to direct, that in acting for the advantage of the interested, he was yet to keep secret that the tobacco-belonged to foreigners. There is, unquestionably, great force in this observation : and if the justification of Barry rested solely on the power given him in this clause, to act for the best, it would be doubtful, how far it would avail him. The court, however, considers those words principally applying to the purchases, and as indicative of an expectation that a state of things would remain, in which the tobacco was to retain the character of American property, rather than as limiting the powers of Menendez over this part of the subject, in the event of such revolution as would make America a belligerent. The court forbears to make a critical examination of the words, because its opinion is formed on the character in which Menendez came to America, as stated in the letter introducing him to Barry. That letter warranted the belief that he was the principal *and confidential [*446-agent of the plaintiffs; that he had particular instructions for the government of his conduct, and that Barry was to receive and trust his verbal communications, especially, on the subject of expediting the tobacco to Spain.
 

 It is impossible to read the letters from Menendez to Barry, which form a part of the bill of exceptions, without feeling a conviction that this was-the understanding of the parties. He approves the conduct of the defendant, in the style of a man whose approbation gave a sanction to it, and when he directs the shipments to be made in the name of Charles Longhy, of Genoa, he says, “ if you act conformably to what I have here mentioned, as. to further shipments, I, from this moment, approve thereof, and that it may appear, and to save you from any accident that may occur, as also, that such has been with my knowledge and approbation, you are to keep this letter in your possession, in order, that at no time whatever, you should be chargeable with the consequences.” Such was the opinion which the confidential agent of the plaintiffs, in possession of their private instructions, entertained of his own powers.
 

 He was not mistaken in their extent; at least, the defendant had no right to believe him mistaken. On his arrival, he declared to Barry, that he was-in possession of private instructions, distinct from those which were contained in the letter of the 27th of January. He produced those instructions. The chief clerk of Barry read so much of them as related to vessels ; and they did not require that the shipments should be made in American, but in neutral vessels ; and in the letter of Menendez to the chief clerk, dated on the 14th June, and accompanying that of the same date addressed to the defendant, directing him to ship the tobacco as the property of Charles* Longhy, of Genoa, he says, referring to a copy of his private instructions, “ you -will see, that I am expressly ordered to make the shipments in neutral
 
 *268
 
 vessels, and that the property shall appear as that of a neutral subject.” What right had he to suspect that the confidential agent of the plaintiffs, to whose verbal communications they referred him, had forged instructions which he produced as those of his principals ?
 

 The counsel for the plaintiffs question the existence of these private in-*447] structions, and demand their production. *But how were they to be authenticated ? Only by Menendez himself. Are not then their contents to be proved by the declarations of Menendez, by his stating them, and by the chief clerk of Barry, who read a part of them. To the court, it appears, that in such a case as this, the proof respecting them is as ample and satisfactory as ought to be required.
 

 After taking this extensive view of the case, of the powers of Menendez, and of the confidence the defendant was bound to repose in him, it only remains briefly to observe, that the directions he gave were not such as to awaken suspicion. On the 14th of June 1798, when these instructions were given, America had ceased to be a neutral power. War, it is true, was not formally declared, but it had commenced in fact, and hostilities were authorized by that department of the government which is invested with the power of making war. In such a state of things, the course which prudence would have dictated to the plaintiffs, had they been themselves in the United States, certainly was, to cover the tobacco as neutral, not as American property, and when their agent, possessing private instructions, directed the property to be shipped as neutral, not as American, the defendant would have been culpable in thwarting him.
 

 It is scarcely necessary to add, that Menendez stated himself to be, and probably was, something more than an agent: he declared himself to be interested in the cargoes. This declaration, under all the circumstances of the case, was not to be discredited. Upon that, however, the judgment of the court is not founded. The letter of the 27th of January, represented him as the principal and confidential agent of the plaintiffs, whose verbal communications were to be trusted. He declared himself to possess particular instructions respecting a transaction which he came to superintend, and under those instructions, he gave orders which the defendant has obeyed. The court is of opinion, that in so doing, the defendant is justifiable, and no error has been committed in the court below, in so instructing the jury.
 

 %
 
 , *Upon the other part of the exceptions, the price given for the J tobacco, it is unnecessary to say more than that there is no error in the opinion of the court.
 

 Affirmed.