GEORGE W. FERGUSON, APPELLANT, vs. MARY ANN PORTER, EX-
ECUTRIX, &c., APPELLEE.

A bailee or factor is bound to follow such instructions as are given to him by his principal, unless the instructions are inconsistent with the special agreement between them ; and is liable for any injury resulting from a departure from such instructions ; and this liability is incurred, although the services undertaken were gratuitous.

It is erroneous to charge the jury, that they cannot find for plaintiff, because there is no good or valid consideration for the promise or undertaking alleged in his declaration proved.

The statute of the State requiring the judge presiding in the trial of common law cases, " to charge the jury only upon some point or points of law, or exceptions to evidence arising on the trial of the cause," is a positive prohibition against the statement of facts as proved.

Appeal from a judgment rendered at the spring term, 1849, of the Circuit Court of the County of Monroe, the Hon. JOSEPH B. LAN-CASTER, Judge of the Southern Circuit, presiding, on the trial of the cause in the Court below.

The jury found a verdict for the appellee, under the instructions given by the Judge—a full statement of which, together with the pleadings in the case, and the evidence adduced at the trial, will be found in the opinion pronounced by Ch. J. Douglas in this Court.

*Papy*, for appellant.

*Hogue*, for appellee.

DOUGLAS, Ch. J.

This suit was instituted by George W. Ferguson against Mary Ann Porter, executrix of the last will and testament of Joseph Y. Porter, deceased, in the Circuit Court of Monroe County, to recover damages for an alleged breach of duty by the said Joseph Y. Porter, as the bailee and factor of the plaintiff in this suit. The declaration contains two counts. The first charges, that in the month of January, in the year 1846, the plaintiff and the said Joseph Y. Porter, (then living but since deceased) entered into an agreement, together, whereby the said plaintiff was to manufacture and make arrow-root, and from time to time send and deliver the same to the said Joseph Y. Porter, as his factor, as aforesaid, at the county aforesaid ; and in

consideration that the said plaintiff would purchase his supplies from the said Joseph Y. Porter, the latter undertook and agreed to receive and ship the same to the port of New Orleans and sell and cause to be sold on the said plaintiff's account.    That in September, 1846, at the county aforesaid, in compliance with said agreement, and at the special instance and request of the said Joseph Y. Porter, the said plaintiff sent and delivered to the said Joseph Y. Porter 1725 lbs. of arrow-root, worth $140, which the said Joseph Y. Porter was bound by his said agreement to ship to the port of New Orleans for sale, which he neglected and refused to do, but shipped the said arrow-root to the port of Charleston, contrary to agreement and the wishes of the plaintiff, whereby the same was wholly lost to said plaintiff.    Whereby he, the said Joseph Y. Porter, in his lifetime, became liable, &c., and undertook to pay, &c.    The *second* is a general count, charging that the said Joseph Y. Porter was indebted to the plaintiff in the sum of $140 for 1725 pounds of arrow-root sold and delivered by the plaintiff to the said Joseph Y. Porter at his request, and the further sum of $140 for money had and received.    To which declaration, a plea of *non assumpsit* was put in by the defendant at Nov. term, 1848, and at the May term, 1849, the cause was submitted to a jury, who found for the defendant.    Whereupon a judgment was entered that the said plaintiff take nothing by his bill, &c., from which judgment an appeal was taken to this Court.

It appears by a bill of exceptions set out in the record, that there was conflicting testimony as to the undertaking and agreement of the said Joseph Y. Porter, respecting the arrow-root ; there was no dispute about the delivery of it, but one witness stated that in the latter part of the year 1845, or early part of 1846, the plaintiff, then in Key West, wanted to purchase goods of Joseph Y. Porter, and send him arrow-root at a stated price to pay for them ; that Porter refused to sell plaintiff goods upon any other terms of taking arrow-root, than that he Joseph Y. Porter, should sell it for the best price he could get at his own discretion, and after paying expenses of sale, credit the plaintiff with the balance of the amount of sales ; that Joseph Y. Porter advised plaintiff to send arrow-root to New Orleans ; that plaintiff agreed to said terms, bought goods and sent arrow-root several times ; that Joseph Y. Porter made two shipments to New Orleans, and the price not continuing good, directed wit-

ness, who was his clerk, to ship the next to Charleston, with the hope of getting a better price ; that in October, 1846, he did ship the arrow-root in the declaration mentioned, towards Charleston, uninsured, and that it was lost at sea in the hurricane of that month. The other witness (for there appears to have been but two examined) stated that in the summer or fall of 1846, the plaintiff, who resided at Miami, wrote to said Porter at Key West, promising to make arrow-root to be sent to Porter for shipment, and inquiring of said Porter what advance he was willing to make on it, and on what charges and conditions he would receive it, and ship it to New Orleans ; that in about six or eight weeks, plaintiff received a letter in answer to his from Porter, stating that he would receive the arrow-root and advance four cents per pound in goods on it ; would ship it to New Orleans and pay over the balance on receiving account of sales ; that upon the receipt of this letter of Porter, plaintiff sent him 1700 pounds or more of arrow-root, in pursuance of the agreement between them in the said letter ; that about the 1st of November, 18-46, witness having been requested by plaintiff to do so, called at Porter's store in Key West to inquire about this 1725 pounds of arrow-root, and was informed that it had been shipped to Charleston in the mail boat, upon the ground that there had been no opportunity to ship it to New Orleans. That a few days afterwards, having heard of the loss of the mail boat, he, witness, called again at said store, when said Joseph Y. Porter spoke of the loss of the mail boat and the arrow-root : said it would be plaintiff's loss, and that he had shipped it at plaintiff's risk. Witness told said Porter that he had shipped it contrary to orders. Porter said he knew he had, but there had been no opportunity to ship it to New Orleans. This is all the testimony material in the question presented for consideration, which the record in this case discloses.

The plaintiff's counsel asked the Court to charge the jury " that if they believed from the testimony, J. Y. Porter accepted the consignment of arrow-root, he was bound to follow such instructions as he knew his principal to have given, and to have fulfilled to the letter any agreement that had been made between them, and that if he had given a different direction from the one understood and agreed upon between them, he is responsible, though he did it with good motives." The Court gave the instruction with the addition that

" it is good law where there is a good declaration." To which addition the plaintiff's counsel excepted. The plaintiff's counsel here moved for permission to amend his declaration to the effect that plaintiff did purchase said supplies, and to state the value of such purchases. The defendant's counsel objected, and the Court refused permission. To which refusal plaintiff's counsel excepted. The defendant's counsel asked the Court to instruct the jury that they cannot find for plaintiff, because no good or valid consideration for the promise and undertaking of Porter alleged in the declaration, is set up by plaintiff or proved. Which instruction the Court gave, and plaintiff's counsel excepted. The errors assigned are

First—The Court erred in not giving without qualification, the first instruction asked for by the plaintiff below.

Second—The Court erred in adding the qualification to the first instruction asked for by the plaintiff below, as appears by the bill of exceptions.

Third—The Court erred in refusing to permit the amendment to the declaration asked for by the plaintiff.

Fourth—The Court erred in giving the instruction asked for by the defendant below.

Fifth—The Court erred in giving judgment for defendant.

As to the first instruction asked, it may be proper to observe, that it is very inartificially drawn. It would have been proper for the Court to have instructed the jury, that if they believed from the testimony, that Joseph Y. Porter accepted the consignment of arrowroot as bailee or factor of the plaintiff, he was bound to follow such instructions as his principal had given to him respecting it, if there was no special agreement between them on the subject, or if there was, and the instructions given were in accordance with it; but he would not have been bound to follow any instruction repugnant to the terms of any such agreement; nor would he have been liable for giving directions contrary to it, unless such directions had been followed. The plaintiff as well as the defendant, would have been bound to a substantial compliance with the terms of any special contract, that may have existed between them in relation to this matter. And we think the whole of this charge, from the manner in which it is drawn, might very properly have been withheld. But if given, it should have been without the qualification that was added. Because

from the manner in which that qualification was coupled with the instruction asked, it seemed (though doubtless not intended,) to leave to the jury the question whether the declaration was good or not, (a question exclusively for the determination of the Court) and might have tended to mislead them.    But more especially, because such a question did not properly arise in the case.    If it were necessary to have stated such a consideration in the declaration, and none was stated, then the declaration would have been bad on demurrer, and that would have been a proper mode of taking advantage of the error.    If such a consideration were necessarily stated, it should have been met by a special plea.

There are two counts in the declaration—one special and the other a general *indebitatus assumpsit*.    And it has not escaped our attention that in a note 1 Chitty's Pl., 55, a., it is said, that to a special count in *assumpsit*, the want of consideration should be pleaded specially, but in a common *indebitatus* count, the want of consideration for the promise, is inadmissible under the common plea of *non assumpsit*.    But the 2d rule of practice adopted for the government of the Circuit Courts of this State, page 10, requires " in any species of *assumpsit* all matters in confession and avoidance, including not only those by way of discharge, but those which show the transaction either to be void or voidable in point of law, on the ground of fraud or otherwise, to be specially pleaded," and in the text of 1 Chitty's Pl., page 557, infancy, coverture, release, payment, performance, want of consideration and illegality of consideration, are all enumerated as matters that must be specially pleaded in every species of assumpsit.    In the case of Papenger vs. Brooks, 7 Carr & P., 110, 32 Eng. C. L. Rep., 259, which was an action of *assumpsit* brought upon a special agreement, plea *non assumpsit*, and an attempt to set up as a defence a want of consideration, Tindall, Ch. Justice, said " the very object of the new rules was, that such a defence should be pleaded."    Wild, Sergt. for plaintiff, said " if it had been pleaded, we should have come prepared to meet it."    Talfourd, Sergt. for defendant, then submitted that the plaintiff could never recover nominal damages as the defendant was not to pay money, but to deliver timber at certain prices specified in an agreement that was not produced.    Tindall, Ch. J., " it is no matter about that agreement ; you are to deliver timber to the value of £350.    I think you cannot

get on. It seems to me that you have no answer to this record. If you have any relief in equity that is another matter. I cannot deal with it here." Verdict for plaintiff £350. This is the only decision we have been able to find upon this question under the new rules in England, (from one of which, this of our's was copied,) but it is directly in point, if want of consideration is an appropriate defence in a case like this, but for reasons hereafter stated, we do not so consider it. This disposes of the first and second errors assigned.

As to the third, which was not relied upon at the argument of this case, it is sufficient to say, that the question in regard to amendments was so fully discussed and so well considered by this Court, in the case of Stewart vs. Fontaine & Bennett, 1 Florida Rep., 441 to 447, and in Britt vs. Ming, ibid, 447 to 455, that the question ought to be considered at rest in this State. In the first of these cases, at page 442, the Court said: "The doctrine of amendments as it stands at common law, independent of the statute of amendments and jeofail, seems based upon the discretion of the Court;" and numerous authorities are cited in the first of these cases in support of this opinion, and the principle has been established by repeated decisions of the Supreme Court of the United States, that the exercise of discretion in the Court below, in granting or refusing amendments of pleading, affords no ground for a writ of error. See United States vs. Buford, 3 Peters S. C. Rep. This is the general common law rule—in addition to, or rather in accordance with which, our statute of November 23, 1828—Sec. 50, Duval's Compilation, 99. Thompson's Digest, 382—especially provides that "the Court may, in its discretion, give leave to either party to amend his declaration or other pleading in a cause at any time before the case is submitted to a jury;" and if it may, at its discretion, give leave, it follows as a matter of course, that it may, at its discretion, withhold it.

The fourth—that the Court erred in giving the instruction asked for by the defendant—we consider well assigned. The instruction asked and given was, that they (the jury) cannot find for the plaintiff, because no good or valid consideration for the promise and undertaking of Porter, alleged in the declaration, is set up by the plaintiff, or proved. We have said that no such question as that of consideration for the promise or undertaking of Porter arises in this case. The reason is, that the undertaking itself raises the duty on which

his liability (if he were liable at all) rests.   So far as regards the first count in the declaration, (and as we have seen no question of consideration could have been raised upon either, without a special plea,) this charge, therefore, was inapplicable to the issue, and besides it took the facts from the jury, and contravenes the provisions of the 1st Section of the Act of the General Assembly, approved January 3d, 1848, to regulate judicial proceedings—acts of 1848, page 12, which declares that, " hereafter, in the trial of all common law cases in the several Circuit Courts of this State, it shall be the duty of the judge presiding on such trial, to charge only upon the law of the case, and in the manner following—that is to say, the said judge shall only charge the jury upon some point or points of law, or exceptions to evidence, arising on the trial of such cause, and such charge shall be wholly in writing."   The complaint is, that the Court told the jury they could not find for the plaintiff.   By reference to the testimony, it will be perceived that the only two witnesses examined differ very materially upon at least one very important point in the case.   The facts should have been left to the jury, whose peculiar province it is to say what effect they shall have.   10 Peters S. C. Rep., 98.

It is the province of the jury to weigh and decide upon the sufficiency of the evidence.   Greenleaf vs. Birth,.9 Peters S. C. Rep., 299.   The case of Reel vs. Reel, 2d Hawk. N. C. cases, was upon a statute somewhat similar to ours.   The opinion was delivered by Ch. J. Taylor, who said, " This is a motion for a new trial, on the ground that the Court intimated its opinion to the jury of the matter in issue."   The Act of Assembly, relative to the duty of a judge in charging, (he said,) forbids him " to give his opinion whether a fact is fully or sufficiently proved, such matter being the true office and province of a jury ;" and it " directs him to state in a full and correct manner the facts given in evidence, and declare and explain the law arising thereon."   Our statute does not impose the duty to state in a full and correct manner the facts given in evidence—whether it forbids it or not, is a question which it is unnecessary for us now to decide.   It certainly requires that the judge charge the jury only upon the law of the case.   Ch. J. Taylor, commenting upon the statute of his State, then under consideration, says : " The evident design was to preserve the purity of the trial by jury, and thus to secure

to every man whose rights were controverted a decision on the facts in issue, which should be the result of the jury's investigation of the evidence, uninfluenced and unbiassed by the opinion of the judge, whose province it is to pronounce whether testimony is admissible, and to instruct the jury as to the law, accordingly as they shall believe the facts or otherwise. It is not (he added) for this Court to discuss the wisdom or expediency of this law, or to prevent its true construction, under a belief that no mischief can be produced thereby, or even that justice can be more substantially administered. It is the will of the Legislature, and we are bound to obey it; so that every man who conceives himself aggrieved by disobedience of the law, has a right to be heard here, and if he can establish his case, he has a right to a new trial, without any necessity on the part of the Court of inquiring into the merits of the verdict; for although it should appear to this Court, that the evidence spread upon the record is such, that, if believed by the jury, it well warranted the verdict, yet, if it appear that the judge in his charge gave an opinion whether a fact was fully or sufficiently proved, it cannot appear how far the verdict was produced by the testimony, since the jury were to judge of its credibility, or by an intimation of the opinion of the judge."

" The propriety of the verdict, then, or its conformity with the evidence, we leave out of the question, and desire to be understood as giving no opinion upon it; for if the motion for a new trial were overruled, because this Court approved of the verdict, and it should at the same time appear that the judge had departed from the direction of the law in charging the jury, it would be deciding in effect that disobedence to the law may be tolerated or not, according to the consequence which follows from it. If a verdict, contrary to or unsupported by evidence, has been produced by it, the party shall be entitled to a new trial; but if the evidence justifies the verdict, and the right of the cause has been duly administered, that the charge of the judge deviating from the law shall be overlooked, is not the rule prescribed by the Legislature.. They have inhibited the declaration of the judge's opinion on the proof of facts in every case, presuming that in every case it encroaches on the proper functions of the jury. It imparts a bias to the judgment of the jury, which they are disposed to receive with confidence, and seldom make an effort to resist." And from the truth of this last proposition, we think no one who has

been accustomed to attend jury trials, and witness the effect of a judge's charge to them upon the facts, will be inclined to dissent. The Chief Justice, examining the charge complained of in that case, to ascertain whether it was conformable to the Act of Assembly, concluded as follows : " Upon considering the whole of the charge, it appears to me that its general tendency is to preclude that free and full inquiry into the facts which is contemplated by the law—with the purest intentions, however, on the part of the worthy judge, who, receiving a strong impression from the testimony adduced, was willing that what he believed to be the very right and justice of the case should be administered."

" I am not unaware (he said) of the difficulty of concealing all indications of the convictions wrought upon the mind by evidence throughout a long and complicated cause ; but the law has spoken, and we have but to obey." We may with propriety say the same as to the intention of the judge who gave the charge, which we are now discussing. That the error was inadvertently committed, we have not the shadow of a doubt, but it is not the less, therefore, our duty to correct it. Without saying whether we should deem it to be our duty to award a *venire de novo* in all cases, where the verdict appears to us to be well sustained by the evidence, as shown by the record—where the judge, in his charge to the jury, had contravened the provisions of the act of our General Assembly above cited, we are ready to admit that there is much weight in the reasoning of the Court, in the case we have cited from North Carolina. How can an Appellate Court judge of the credibility of a witness ? It can read his testimony, but how can it determine the weight or influence which it ought to have had on the minds of the jury in coming to a conclusion upon the evidence, as compared with the testimony of other witnesses, or other evidence in the cause—a question which must be decided upon matters which do not necessarily form a part of the record, and rarely, if ever, appear in it. An able writer upon the law of evidence says, " it frequently happens that a witness labors under some influence, arising from natural affection, near connection, or mere expectation of contingent benefit or evil, which may afford a much stronger temptation to perjury, than that which would arise from any defined and legal interests, which yet would have absolutely excluded his testimony." This is a necessary consequence

resulting from the consideration, that the law must operate by means of certain, definite and peremptory rules, and the great mischief and inconvenience that would result from laying down rules too wide and extensive in their operation. When, therefore, the peremptory rules of law cease to operate, it is for the jury to estimate the degree of influence by which the testimony of a witness is likely to be corrupted, and to determine whether, under the circumstances, he be the witness of truth.  1 Starkie on Ev., 481.

In arriving at this conclusion, a consideration of the demeanor of the witness upon the trial, and upon the manner of giving his evidence, both in chief and upon his cross examination, is oftentimes not less material than the testimony itself.  Sir W. Blackstone, 3 Com., 373, observes " In short, by this method of examination, and this only, the persons who are to decide upon the evidence have an opportunity of observing the quality, age, education, understanding, behaviour and inclinations of the witness, in which points all persons must appear alike, when their depositions are reduced to writing, and read to the judge in the absence of those who made them, and yet, as much may frequently be collected from the *manner* in which the evidence is delivered as the *matter* of it."

The case of Ivey vs. Hodges, 4 Humphrey's Rep., 155, was decided upon the 9th sec. of the 6th art. of the Constitution of Tennessee, which provides " that Judges shall not charge juries with respect to matters of fact, but may state the testimony and declare the law." This provision (said the Court) arose out of the jealousy with which our ancestors always looked upon any attempt of the Courts to interfere with the peculiar province of the jury, the right to determine when facts are proved in a cause and to put a stop to the practice of summing up as it was and is yet practiced in the Courts of Great Britain, and in all probability in the Colonies before the revolution, which consists in telling the jury not what is deposed to, but what is proved.  This, the framers of our Constitution (say the Court) considered a dangerous infraction of the trial by jury, and have prohibited it by express terms.  " Judges shall not charge with respect to matters of fact," that is, they shall not state to the jury the facts that are proved ; to do so is error, for which a cause must be always reversed.  But not being disposed to withhold from the jury any proper aid which the Judges may be enabled to render them in their inves-

tigation, they have provided that they may *state* the testimony, that is, may, for the purpose of refreshing the memory of the jury, inform them what facts the different witnesses have deposed to, leaving them to judge of the truth thereof, and to draw their deductions therefrom. It will be observed that the prohibition is direct and positive, " shall not," the power permissive, " may state." From this phraseology that Court deduces the opinion that it is discretionary with their judges to inform the jury what facts the different witnesses have deposed to or to " declare the law." But the prohibition is positive, and extends to all cases. Our statute arose out of the same jealousy, and was intended to preserve the purity of the trial by jury, and surely if jury trial is worth having, it is worth preserving in all its integrity.

And here we might with propriety stop, but as an objection was taken at the trial, that no consideration of the promise and undertaking of the said Porter, alleged in the declaration, was set up by the plaintiff, or proved, we deem it proper to state our opinions more fully on the subject. It will be seen by reference to the declaration, that it charges that the said Joseph Y. Porter, (in his lifetime,) undertook and agreed with the plaintiff to receive of him and ship to New Orleans, certain arrow-root, (alleged to be worth $140) and sell or cause it to be sold for and on said plaintiff's account, and that he received the arrow-root, but instead of shipping it to New Orleans, shipped it for Charleston, whereby it was wholly lost, &c. That he, (the said Porter,) received the arrow-root, does not seem to be controverted ; indeed the testimony shews that he received it and shipped it for Charleston, and that it was lost in a gale of wind. As to the agreement, however, between the plaintiff and Porter, about the shipping and sale of arrow-root, the testimony is contradictory. The undertaking of the said Joseph Y. Porter to receive the arrow-root of the plaintiff, and sell it or cause it to be sold, and account to him for it, created a duty on the part of said Porter to act in regard to it conformably to the terms on which he received it, and if he failed to do so, and it was consequently lost, he was liable on that undertaking. Ever since the great case of Coggs vs. Bernard, decided by Lord Holt, 2 Lord Raymond's Reps., 909, it has been held that the undertaking is the gist of this kind of actions. This case is one of the most celebrated ever decided in Westminster Hall, and justly so,

since the elaborate judgment of Lord Holt contains the first well considered exposition of the English law of bailments. The point which the decision directly involves, viz : That if a man undertakes to carry goods safely, he is responsible for neglect, though he was not a common carrier, and was to have nothing for the carriage, is clear law, and forms part of a general proposition in the law of principal and agent, which may be stated in the following words, viz : " The confidence induced by undertaking any service for another, is a sufficient legal consideration, to create a duty in the performance of it." 1 Smith's Leading Cases, 169, (in note.) By this rule, a gratuitous and voluntary agent, who has given no specific undertaking, though the degree of his responsibility is greatly inferior to those of a hired agent, is yet bound not to be guilty of gross negligence. Wilkinson vs. Coverdale, 1 Esp. Rep., 74. Beauchamp vs. Powley M. & Rob. Rep., 38. Story on Bailments, sec. 165.

The liability of paid agents where there has been no conversion, differs from that of unpaid agents. As to the former, the obligation is not as in the case of a common carrier to carry, or as in the case of an innkeeper to keep ; but the contract is for the services of employee, for diligence and skill in the agency or work undertaken, and the duty and liability of a paid agent to whom property is delivered, as a warehouse man, or a forwarding agent, is the same as that of a person employed about property in possession of the employee, 1 Smith L. Cases, 185–186. No man can compel another to render him acts of friendship of any kind, either gratuitous or with a view to remuneration, but if the person applied to, consents to render the services, and undertakes the business, he is bound to act in conformity to the terms on which the request was made. Walker, *et al.* vs. Smith, 1 Wash. C. C. Reps., 153. Loraine vs. Cartwright, 3 Wash. C. C. R., 153, 155. Story on Bailments, sec. 170, a., sec. 171, 171, b., 171, c., 171, d. section 455. Jones on Bailments, 98. Story on Agency, sections 182, 186. It is the duty of the agent in all cases to manage the business of the principal to the best advantage and the best of his ability. Story on Agency, sec. 228, 1. Livermore on Agency, page 394. And he is bound to pursue the orders of his principal, and is liable for any injury consequent upon his departing from them, however fair may have been his motives for such departure. Manilla vs. Barry, 3 Cranch, 415. 2 Wash. C.

C. R., 203. 4 Wash. C. C. R. 559. Bell vs. Cunningham, 3 Pet. S. C. R., 69.

An agent that does not comply with instructions, is liable for the loss incurred thereby, although the services were gratuitous. Walker vs. Smith, Wash. C. C. R., 152. French vs. Reid, 6. Burney's Rep., 308. A paid agent is liable if negligent, and not liable if not negligent. Moore vs. the Mayor of Mobile ,2 Stewart's Rep. 81. Whenever an agent violates his duties or obligations to his principal, and loss or damage thereby falls upon his principal, he is responsible therefor and bound to make a full indemnity. Story on Agency, sec. 217. Paley on Agency, 71, 74. Marzett vs. Williams, 1 B. & Adolph., 415. 1 Livermore on Agency, Chap. 8, sec. 3, page 398. Dodge vs. Tileston, 12 Pic., 328. Holmes vs. Misroom, 3 Brevard's Rep., 209.

The declaration charges the undertaking of Joseph Y. Porter, (as before stated,) that he entered upon the business, that he failed to comply with the terms of the undertaking and that the property was consequently lost. The plea of *non assumpsit* denies the undertaking ; this raises a sufficient issue to determine the rights of the contracting parties ; no further consideration need to have been alleged ; a plea of want of consideration would seem to be inapplicable to such a count, it would put in issue nothing more than the plea of *non assumpsit.* The only questions arising in this case, or rather the only questions in contest, seem to be as to the undertaking of Joseph Y. Porter. Was the arrow-root in question received by him as the bailee or factor of the plaintiff? If it was, did he, (the said Porter,) act in relation thereto in conformity to the terms on which he received it ?—these being mere questions of fact for the jury to decide upon the evidence adduced in the case, and that evidence which we have seen, was upon some points conflicting, having been withdrawn from the jury by the fourth instruction above cited. The judgment of the Court below is reversed, and the cause remanded for further proceedings in accordance with this opinion.

*Per curiam.*

BALTZELL, J.,

Not concurring altogether in the views expressed by the Chief Justice, delivered the following :

I concur in the opinion expressed as to the instruction asked by

plaintiff. The instruction given at the instance of defendant was, " that no good or valid consideration for the undertaking of Porter, alleged in the declaration, was set up by plaintiff, or proved." The sufficiency of the pleadings was not matter proper to be submitted to the jury, nor is it to be inferred (although the instruction is somewhat ambiguous) that the counsel either asked, or the Court gave, an instruction referring it to them. The preferable construction is, that the consideration alleged in the declaration was not proved. If correct in this view, the instruction was erroneous, as being directly at variance with the evidence in the cause. Such an instruction is against common law principles, and the Constitution of the State securing the trial by jury ; so that a reference to the law of the Legislature of the State is, in my opinion, not called for, as necessary to the elucidation of the case. I leave it entirely out of the question. According to the view I take of the subject, the only point in contest was, as to the compliance of Porter with his engagement. He had undertaken to sell arrow-root for the plaintiff, and forwarded it for sale to Charleston. Was the shipment to this particular port in pursuance of, or in conflict with, his engagement with his principal ? In agencies of this kind, it is well settled that a factor should deviate as seldom as possible from the terms, and never from the spirit and tenor of the order he receives. His duty is to obey. If he sends commodities confided to him to a different place from that to which he was directed, they will be at his risk, unless the principal, on receiving advice of the transaction, acquiesce, and this whether the service was gratuitous, or for compensation. 1 Wash. C. C. R., 152, 453. 4 Wash., 551.

The evidence is contradictory. One of the witnesses deposing that the disposal of the arrow-root was to be at the discretion of the defendant ; another that he was specially directed to send to New Orleans. According to the mode adopted by the English Courts, the jury would have been asked specially as to the facts, whether there was this discretion or not, and after ascertaining this, they would be directed to find accordingly in favor of defendant, or damages for plaintiff. The practice in America is different in some degree, though leading to a like result. The course here would be to give instructions, having a distinct reference to this discrepancy in the statement of the witnesses. The instruction, according to my

view, should have been as follows : If the jury should be of opinion that the arrow-root was to be disposed of at the discretion of Porter, and acting upon that discretion, he sent it to Charleston, he is not responsible for the loss occasioned through the destruction of the vessel.   If, on the contrary, they should find that the understanding between the parties was, that the arrow-root was to be shipped to New Orleans, or was to be subject to the instructions of plaintiff, and he directed it to be sent there, and defendant deviated by sending it to Charleston, the shipment was at his risk, and in case of loss, he is responsible for its value.    Such is the view I have thought proper to express in reference to the case, coinciding in the conclusion announced in the opinion delivered by the Chief Justice, but not entirely in the views declared.