Arthur Richard GATES,
Petitioner-Appellant,

v.

Robert J. HENDERSON, Superintendent,
Auburn Correctional Facility,
Respondent-Appellee.

No. 361, Docket 76–2065.

United States Court of Appeals,
Second Circuit.

Argued Oct. 19, 1976.

Decided Jan. 12, 1977.

On Rehearing En Banc
Panel Judgment and Decision Vacated
Aug. 19, 1977.

Certiorari Denied Jan. 16, 1978.
See 98 S.Ct. 775.

Jesse Berman, New York City, for petitioner-appellant.

Ralph McMurry, Asst. Atty. Gen., State of N.Y., New York City (Louis J. Lefkowitz, Atty. Gen., Samuel A. Hirshowitz, First Asst. Atty. Gen., Margery E. Reifter, Asst. Atty. Gen., New York City, of counsel), for respondent-appellee.

On Rehearing En Banc.

Before KAUFMAN, Chief Judge, and SMITH, FEINBERG, MANSFIELD, MULLIGAN, OAKES, TIMBERS, GURFEIN, VAN GRAAFEILAND and MESKILL, Circuit Judges.

MULLIGAN, Circuit Judge:

The petitioner-appellant Gates appealed from an unreported decision in the United States District Court for the Southern District of New York, Hon. Robert L. Carter, *Judge*, dated May 27, 1976, which denied without a hearing his habeas corpus application. The district court granted him a

certificate of probable cause. On appeal a panel of this court, Judge Timbers dissenting, by a 2–1 vote reversed and remanded for an evidentiary hearing. On the suggestion of Robert J. Henderson, Superintendent, Auburn Correctional Facility, respondent-appellee, and at the request of a member of the panel of this court for an en banc poll, we granted rehearing en banc. We vacate the panel judgment and decision, *supra*, and affirm the order of the district court dismissing the petition for a writ of habeas corpus.

## I

At approximately 1:00 a. m. on the morning of September 7, 1966 a policeman, attracted by screaming, entered the Spring Valley, New York apartment of Patricia Gates. He and her upstairs neighbor, Mrs. Mierop, found Patricia Gates mortally wounded by knife stabs, lying on her bed in a pool of blood. She was removed to a hospital and was pronounced dead at 1:20 a. m. Patricia Gates was the estranged wife of the petitioner Arthur Richard Gates, having received a decree of separation from him in June of that year which awarded her custody of their four children. As they left the courthouse petitioner told his wife in the presence of her attorney, "You will never live to enjoy the children. I will see to it myself." The awarding of custody of the children to his wife rankled Gates. Mrs. Mierop was later to testify at his murder trial that two days before the murder she heard Gates tell his wife, "You better enjoy the kids while you have them. You won't have them for long."

At about 1:45 a. m. on the morning of the murder Gates was stopped by a police officer in the business district of Spring Valley for failing to dim his headlights. Upon learning his identity, the officer arrested Gates for assault apparently having received a wanted person bulletin for Gates some ten minutes before. Gates was brought to police headquarters and without protest was fingerprinted and palmprinted.

The investigation of the murder by the police revealed that entrance to Patricia Gates' apartment had been obtained through a bathroom window which had been opened after the screen had been removed. A set of fresh fingerprints was found on the screen so positioned that the prints could have only been made by someone standing outside the first floor apartment and pulling the screen from its place. A palmprint with the fingers pointing into the room was also found on the bathroom windowsill. One fingerprint and one palmprint were positively identified as those of appellant.

Gates was convicted of murder in the first degree in County Court, County of Rockland, New York. On February 14, 1967 Judge Morton B. Silberman sentenced Gates to a mandatory life sentence noting that the jury verdict of premeditated and deliberate murder was fully justified by the evidence. Gates' conviction was affirmed without opinion by the Appellate Division, 29 A.D.2d 843, 288 N.Y.S.2d 862 (2d Dep't 1968) and by a unanimous opinion of the Court of Appeals, 24 N.Y.2d 666, 301 N.Y. S.2d 597, 249 N.E.2d 450 (1969). Chief Judge Fuld in his opinion for the court noted, "The defendant's palm and fingerprints were located on the window through which the murderer apparently entered the house. Such proof, not susceptible of any other explanation, pointed ineluctably to the defendant's guilt and was sufficient to exclude to a moral certainty any other reasonable hypothesis." Id. at 669, 301 N.Y. S.2d at 600, 249 N.E.2d at 451. Gates then applied for a writ of error *coram nobis* which was denied. *People v. Gates,* 61 Misc.2d 250, 305 N.Y.S.2d 583 (Rockland County Ct. 1969), aff'd, 36 A.D.2d 761, 319 N.Y.S.2d 569 (2d Dep't 1971), motion for leave to appeal denied (1972).

## II

In August 1973 Gates filed a habeas corpus petition in the Southern District of New York raising as the only constitutional issue the lack of probable cause for his

arrest. Counsel was appointed for him under the Criminal Justice Act. 18 U.S.C. § 3006A. Counsel argued that the taking of Gates' palmprints[1] was in violation of his rights under the Fourth and Fourteenth Amendments since probable cause for his arrest did not exist. *Davis v. Mississippi,* 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). Judge Carter, in denying relief, held that Judge Fuld's opinion had already ruled that the Court of Appeals did not reach the merits of Gates' "fruit of the unlawful arrest" argument since "it was not raised below at all" and that that conclusion had been already upheld "by two courts on state collateral attack." As the district court noted, "The Court of Appeals was merely enforcing procedural requirements under New York law and chose to follow its policy of ignoring claims judged not to have been adequately raised below." *Gates v. Henderson,* No. 73 Civ. 3865, slip op. at 7–8 (S.D.N.Y. May 27, 1976).

On appeal to this court, a split panel reversed the district court. Judge Oakes, writing for the majority held that counsel's objection to the prints was "ambiguous" and could have been on both Fourth and Fifth Amendment grounds; that under *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), which had been decided after Judge Carter's opinion, habeas corpus review of search and seizure claims was foreclosed in the federal court only when the petitioner had an opportunity for full and fair litigation of the Fourth Amendment claims; that petitioner had no such opportunity here since the majority found he had made a Fourth Amendment objection at the trial level which was never considered by the state courts. The majority further concluded that even if no Fourth

Amendment objection had been made, under *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) the district court could deny federal habeas relief only if Gates had deliberately by-passed state procedures. *Gates v. Henderson, supra,* 568 F.2d 844 at 850. Judge Timbers dissented.

### III

The record of the trial of Gates in the Rockland County Court demonstrates beyond doubt that the objections of his counsel to the taking of the palmprints on September 7, 1966 were on Fifth and Sixth Amendment and not at all on Fourth Amendment grounds. Captain Eisgrau of the Clarkstown Police Department was called as a witness by the state. Mr. Newman, counsel for Gates stipulated outside the presence of the jury that Eisgrau had taken Gates' fingerprints and palmprints. The following colloquy ensued:

The Court: Mr. Newman, you inform me you want to make an objection outside the presence of the jury.

Mr. Newman: Right. As I understand it, the District Attorney is about to introduce into evidence fingerprints which were taken by the present witness, Captain Eisgrau of the Clarkstown Police Department.

Mr. Meehan: Did you say fingerprints?

Mr. Newman: Hand prints, and which were taken at the Clarkstown Police Department on the morning of September 7, 1966. While there is no question, and we will stipulate, that they were taken of the defendant in this case, we raise objection not to the fact that they are or not his prints but to the introduction of those

---

1. The court appointed counsel for Gates raised only the issue of the unlawful taking of palmprints and not of fingerprints. The opinion of Judge Carter is limited to the palmprint issue. The habeas petition prepared by Gates pro se refers only to his allegedly unlawful arrest and makes no mention of either fingerprints or palmprints. In his brief here Gates' counsel limits the objection to the taking of palmprints. The panel opinion in this court, *Gates v. Henderson,* 568 F.2d 844, 845 (1977) refers to "prints" generally and makes no distinction. A reading of the trial record discloses that Gates'

counsel in his trial argument emphasized the taking of palmprints as an evidentiary use and not for the purpose of identification. The state has argued here that since Gates had already been arrested for a 1964 felony in New York, his fingerprints were already available to the state and that therefore the objection now made to the palmprint taking was in any event harmless since the fingerprint evidence was damning per se. We do not address the point further since we hold that in any event there was no error in denying federal habeas relief.

prints on the basis that this man's constitutional rights both under the State and Federal Constitution have been violated by the taking of these prints and as such we object to them.

The Court: Your objection is then on constitutional grounds to the *mere* fact of the taking of the prints?

Mr. Newman: Yes, sir.

The Court: *As such?*

Mr. Newman: *Right, sir.*

The Court: I will overrule that objection.

(Emphasis supplied.)

Subsequently, John A. Slater, Identification Officer, Bureau of Criminal Identification, Rockland County Sheriff's office, who also took Gates' prints was called as a witness for the state. Gates' counsel on voir dire outside the presence of the jury made objection to the use of the palmprints taken by Slater and this exchange took place:

The Court: Do you want to be heard on that, Mr. Newman?

Mr. Newman: Other than what I have said, I don't think there is too much further to say. *I don't think this defendant has been properly advised of his right prior to the time that this palm print was taken and as such I feel it would be a violation of both the State and federal constitutions to permit this document to be received in evidence at this time.*

The testimony is clear, there is no question that no advice of rights was given to the defendant and as such it is prejudicial.

(Emphasis supplied.)

Moreover, Mr. Newman further clarified his constitutional objections of the day before to the Eisgrau palmprinting of Gates:

Mr. Newman: I want the record to indicate, sir, that actually in making this objection yesterday it was intended, although not spelled out in this degree for the reason that trial strategy, if you would call it that, would dictate that I do it this morning after the attempt to get this into evidence, *so that the record is clear my objection yesterday on the constitutional grounds also was on the basis*

*that there was no showing that this was free, voluntary giving or necessary, nor was there any advice given to the defendant that this would or could be used against him in evidence at the trial of this matter.*

(Emphasis supplied.)

In addition to these colloquies out of the presence of the jury the cross-examination of both officers by Newman makes it crystal clear that his constitutional objection to the palmprints was primarily based on the Fifth Amendment, whether force had been employed to take the prints and whether Gates had been warned that they could be used in evidence against him. The fingerprints were viewed as taken for the purpose of identification but the palmprints were singled out by counsel as being an unusual step only taken for their use on trial. There is not a single mention of the Fourth Amendment and the record is barren of any discussion at any time of the legality of the arrest. No suppression motion was ever made.

In his post-trial motion the only constitutional issue raised by Gates' counsel involving the taking of both fingerprints and palmprints was as follows:

Mr. Newman: Along the same general lines concerning the fingerprints and self-incrimination, I think that our stage of society now, Your Honor, has reached the position where we can no longer consider the taking of fingerprints which are used by police authorities as being a proper way of identifying a person.

I think that we have now reached the stage where our constitutional safeguards are such that *I would advance here that in this particular case the taking of the fingerprints themselves constituted a violation of this man's constitutional safeguards.*

This is especially true, I would respectfully submit, where they were taken under the circumstances as they were in this particular case, before the man had been convicted of the crime, and I think that as I said before, our society now has

reached the intelligent position whereby this can no longer be condoned because, in effect, what we are saying is that although you can not speak to this man, you cannot take his statement from him without certain advice and certain safeguards, *you can do physical things to him which compels him to be a witness against himself, and I would respectfully submit that on the basis of both the State and Federal Constitutions that this man's rights had been violated by the mere taking of the fingerprints and palmprints themselves.*

(Emphasis supplied.)

On his appeal to the Appellate Division, Second Department, Gates was represented by the same firm which had appeared for him on trial. Two points in the brief were addressed to the constitutional issues involved in the taking of the prints. Point IV raised squarely the Sixth Amendment issue that Gates' prints were taken for evidentiary purposes without his counsel being present. It was argued that under *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967), Gates was entitled to have his counsel present at the time his palmprints were taken since this step represented a "critical stage" of the proceeding tantamount to a line-up. Point V of the brief was primarily devoted to the Fifth Amendment claim that the taking of the prints was for evidentiary and not identification purposes and therefore constituted testimonial compulsion. A reading of the eight pages of the brief devoted to the alleged errors of constitutional dimension attributed to the trial judge, demonstrates conclusively that counsel had not raised and did not intend to raise any issue at all with respect to the propriety of Gates' arrest. If the omnibus constitutional argument had been related to the incident of his early morning arrest, allegedly made without probable cause, the issue could have been fairly brought to the court's attention without specific reference to the Fourth Amendment. But reading the trial record here makes it certain that the thrust of Gates' argument was that he had been forced to submit to the fingerprinting procedure without being advised that the tests could be used against him on trial and that he was entitled to counsel at the time the test was being administered.

Aside from the clear evidence in the record itself, there is support from the lacunae in the record. Had the issue of the propriety of his arrest been in the mind of Gates or his counsel then surely a suppression motion would have been necessary to develop the facts surrounding the arrest and the reliability of the evidence depended upon by the police. No request for such a hearing was made. Our reading of the record is further supported by the brief of Gates' new counsel retained for the appeal to the New York Court of Appeals. It contains this language with respect to the Fourth Amendment claim:

The Court may consider the question of the admissibility of the fingerprint identification evidence on the ground now urged although an objection was made at the trial only on Fifth and Sixth Amendment grounds.

For the first time, as Chief Judge Fuld correctly observed, the Fourth Amendment issue surfaced in that court.

Although the defendant now asserts that his arrest was unlawful, his failure to object to the use of the evidence on that ground, or even to intimate that such an issue was in the case, deprived the People of any opportunity to show the information in the possession of the police at the time of Gates' arrest. It may well be that, when the arrest was effected— though only 45 minutes after the commission of the crime—the police had already gathered facts, such as the defendant's threats against his wife, which actually furnished reasonable grounds for believing that he had committed the crime. Certainly, on the basis of the record now before us, we should not presume otherwise.

24 N.Y.2d at 670, 301 N.Y.S.2d at 601, 249 N.E.2d at 452 (footnote omitted).

■ We conclude therefore that the panel's finding that Gates' objection on con-

stitutional grounds was "regrettably ambiguous" is not substantiated by a reading of the entire trial record. As the highest court of the state found, as well as two reviewing *coram nobis* state courts and the district court here, no Fourth Amendment claim based on the alleged illegality of Gates' arrest was ever made in or suggested to the trial court.[2]

## IV

In *Stone v. Powell*, 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976) the Supreme Court reversed cases from both the Eighth and Ninth Circuit Courts of Appeals which had granted federal habeas corpus relief under 28 U.S.C. § 2254 to state prisoners whose convictions of murder in state courts had been affirmed on appeal.[3] In each case the prosecution relied on evidence obtained by alleged unconstitutional searches and seizures. Mr. Justice Powell, writing for the majority, sharply curtailed federal habeas review of state convictions by stating:

> We hold, therefore, that where the State has provided an opportunity for full and fair litigation of the Fourth Amendment claim, the Constitution does not require that a state prisoner be granted federal habeas corpus relief on the ground that

**2.** Since no objection was made at the trial level as required under the then governing New York procedural law, N.Y.Code Crim.Proc. § 813–d now codified as N.Y.Crim.Proc.Law § 710.40, the defendant is deemed to have waived any objection during trial to the admission of evidence based on the ground that it was unlawfully obtained. We have held that failure to raise the objection at the time required by § 813–d precludes raising the question on the habeas corpus petition. *United States ex rel. Tarallo v. LaVallee*, 433 F.2d 4 (2d Cir. 1970), cert. denied, 403 U.S. 919, 91 S.Ct. 2235, 29 L.Ed.2d 697 (1971). This rule accords with our own practice of barring suppression of evidence claims on appeal where there was no suppression motion or objection on trial. *United States v. Bianco*, 534 F.2d 501, 508 (2d Cir.), cert. denied, 429 U.S. 822, 97 S.Ct. 73, 50 L.Ed.2d 84 (1976); *United States v. Indiviglio*, 352 F.2d 276, 277 (2d Cir. 1965) (en banc), cert. denied, 383 U.S. 907, 86 S.Ct. 887, 15 L.Ed.2d 663 (1966).

In *O'Berry v. Wainwright*, 546 F.2d 1204 (5th Cir. 1977), cert. denied, 433 U.S. 911, 97 S.Ct. 2981, 53 L.Ed.2d 1096 (1977), a convicted state defendant had similarly failed to raise his Fourth Amendment claim on trial. He did raise it on appeal to the state court where it was rejected because of a Florida procedural requirement comparable to that of New York requiring that the issue be raised on trial. The Fifth Circuit found that under *Stone v. Powell, supra,* he had the opportunity to present the issue even though the state court chose to resolve the claim on an independent, adequate, non-federal basis. In *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) petitioner who failed to raise a Fifth Amendment claim at trial as required by Florida law was held precluded from raising it on federal habeas corpus.

**3.** In *Stone v. Powell* which came to the Court from the Ninth Circuit, the defendant was convicted in state court on a murder charge. His conviction rested to a large degree on testimo-

ny concerning a revolver found in his possession when he was arrested for violating a vagrancy ordinance. The trial court rejected the defendant's contention that this testimony should have been excluded because the ordinance was unconstitutional and the arrest therefore invalid. The state appellate court affirmed and this judgment was concurred in by the federal district court when ruling on defendant's application for habeas corpus. The Ninth Circuit, 507 F.2d 93 (1974), reversed, finding the vagrancy ordinance unconstitutional and consequently defendant's arrest illegal. That court recognized that the application of the exclusionary rule in this instance would not act as a deterrent with respect to police officers but assumed that it would deter the legislature from passing unconstitutional statutes.

In *Rice v. Wolff* the companion case to *Stone*, the defendant was convicted of murder in a state court on the basis of evidence seized pursuant to a search warrant which he claimed on a suppression motion was invalid. The trial court denied this motion and was affirmed on appeal. The defendant sought relief by filing a habeas petition pursuant to 28 U.S.C. § 2254 in the federal district court. The court found that the warrant was invalid and was affirmed by the Eighth Circuit. 513 F.2d 1280 (1975).

The Supreme Court in an opinion by Mr. Justice Powell reversed both these cases. Chief Justice Burger concurred in a separate opinion calling for the abandonment of the exclusionary rule. Id. at 496, 96 S.Ct. 3037. Mr. Justice Brennan, joined by Mr. Justice Marshall, dissented on the ground that the application of the exclusionary rule by state courts was mandated by the Constitution and that 28 U.S.C. § 2254 was available to redress any denial of asserted constitutional rights. Id. at 502, 96 S.Ct. 3037. Mr. Justice White, while noting the inefficacy of the exclusionary rule, also dissented on the grounds that the instant petitions were cognizable under 28 U.S.C. § 2254. Id. at 536, 96 S.Ct. 3037.

evidence obtained in an unconstitutional search or seizure was introduced at his trial.

Id. at 481–82, 96 S.Ct. at 3045–3046 (footnote omitted).

The issue before us then is whether the State of New York provided Gates with the opportunity for full and fair litigation of his Fourth Amendment claim. That the state did so cannot be open to serious challenge. In response to *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) the New York Legislature provided a statutory mechanism for the suppression of evidence obtained through an unlawful search or seizure in violation of the defendant's Fourth Amendment rights. N.Y.Code Crim.Proc. §§ 813–c through e.[4] The motion to suppress is generally to be made prior to trial but it may be made during trial where the defendant was unaware of the seizure or did not have either material evidence or the opportunity to make a pretrial motion. There is no contention here that the State of New York failed to provide the procedural devices affording Gates an opportunity to raise the issue of his allegedly unlawful arrest. It is undisputed, as we have indicated, that Gates' counsel made no pretrial motion to suppress. The record further reveals that during trial when the fingerprint and palmprint evidence was offered, Gates was provided with the opportunity to raise his constitutional objections out of the presence of the jury. As pointed out in Part III of this opinion, Gates never raised any Fourth Amendment objection. This is clearly established by the record and was the view of the New York Court of Appeals when Gates' counsel candidly admitted in his brief that that appeal was the first occasion on which the Fourth Amendment objection was raised. Thus Gates had the opportunity at the trial court but waived it; raised it belatedly, after already having had review in the Appellate Division, in the Court of Appeals where it was rejected. He later raised it in *coram nobis* applications in the state court where it was again rejected because it was not raised on trial.

How then can we possibly find that *Stone v. Powell, supra,* does not control the outcome here? The majority for the panel based its argument on two earlier Supreme Court cases, *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963) and *Fay v. Noia,* 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963). Neither case in our view is relevant.

### a) *Townsend v. Sain*

In *Townsend v. Sain, supra,* the Supreme Court listed six circumstances where a federal court must grant an evidentiary hearing to a habeas petitioner.[5] These situations obviously relate to what constitutes a full and fair evidentiary hearing in a state court but *Stone* announced a new rule—was the state prisoner afforded the *opportunity* for full and fair litigation of his Fourth Amendment claim. Had Gates requested and been given a hearing but it was deficient, an issue under the *Townsend* criteria might possibly surface. But since Gates did not seek a hearing *Townsend* is irrelevant. The majority of the panel imported *Townsend* here because Mr. Justice Powell, while referring to the opportunity for a full and fair litigation several times in his opinion without definition, 428 U.S. at 469, 480, 482, 486, 489, 494 n. 37, 96 S.Ct. 3037, 3044, 3046, 3047, 3049, 3052 n. 37 in one place after reciting that phrase, id. at 494, 96 S.Ct. at 3052, makes a cf. reference to *Townsend.* As the panel majority recognized a cf. sig-

---

4. Now codified as N.Y.Crim.Proc.Law Art. 710.

5. The Court held in *Townsend*:

   that a federal court must grant an evidentiary hearing to a habeas applicant under the following circumstances: If (1) the merits of the factual dispute were not resolved in the state hearing; (2) the state factual determination is not fairly supported by the record as a whole; (3) the fact-finding procedure employed by the state court was not adequate to afford a full and fair hearing; (4) there is a substantial allegation of newly discovered evidence; (5) the material facts were not adequately developed at the state-court hearing; or (6) for any reason it appears that the state trier of fact did not afford the habeas applicant a full and fair fact hearing. 372 U.S. at 313, 83 S.Ct. at 757.

nal refers to an "authority support[ing] a proposition different from that in text but sufficiently analogous to lend support". 568 F.2d at 848 quoting A Uniform System of Citation 7 (12th ed. 1976). While we are not fully appreciative of the significance of the footnoted reference, we are persuaded that it cannot be reasonably interpreted to require a federal court to conduct a hearing on an issue where the state prisoner, having an opportunity to do so, never tendered the question to the state court. Such a proposition would totally undercut the thrust and rationale of *Stone.* In fact, it is not even required by *Townsend.*

The panel majority relied on the first situation listed in *Townsend v. Sain, supra,* 372 U.S. at 313–16, 83 S.Ct. 745, which would require a hearing if the merits of the factual dispute were not resolved in the state hearing. But the Court there said, "There can not even be the semblance of a full and fair hearing unless the state court actually reached and decided the issues of fact *tendered by the defendant.*" 372 U.S. at 313–14, 83 S.Ct. at 757 (emphasis supplied). The issue of fact pertinent here related to the probable cause for Gates' arrest by the police on the morning of his capture. But that issue was never raised in

the trial court as we have indicated. Hence, *Townsend* did not mandate a hearing even before the opinion of the Court in *Stone.*

### b) *Fay v. Noia*

The fifth category mentioned in *Townsend* and relied upon by the panel was, "If, for any reason not attributable to the inexcusable neglect of petitioner, see *Fay v. Noia* [372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963)], evidence crucial to the adequate consideration of the constitutional claim was not developed at the state hearing, a federal hearing is compelled." The panel concluded therefore that even if the state had properly found that the constitutional issue had not been raised, the power to deny federal habeas does not exist unless the federal habeas court finds that there was a deliberate bypass or knowing waiver of the federal claim. 568 F.2d at 850.

We read *Stone* as effectively overruling *Fay* with respect to Fourth Amendment exclusionary rule claims.[6] *Fay* was premised on the hypothesis that "conventional notions of finality in criminal litigation cannot be permitted to defeat the manifest federal policy that federal constitu-

---

**6.** Chief Justice Burger pointed out in his concurring opinion in *Stone v. Powell, supra,* 428 U.S. at 496, 96 S.Ct. 3037, at 3053, the distinction between evidence obtained as a result of an alleged violation of the Fifth Amendment and the reliable evidence obtained in an allegedly unlawful search and seizure under the Fourth Amendment:

The operation of the [exclusionary] rule is therefore unlike that of the Fifth Amendment's protection against compelled self-incrimination. A confession produced after intimidating or coercive interrogation is inherently dubious. If a suspect's will has been overborne, a cloud hangs over his custodial admissions; the exclusion of such statements is based essentially on their lack of reliability. This is not the case as to *reliable* evidence—a pistol, a packet of heroin, counterfeit money, or the body of a murder victim—which may be judicially declared to be the result of an "unreasonable" search. The reliability of such evidence is beyond question; its probative value is certain.

Id. at 496–97, 96 S.Ct. at 3053 (emphasis in original).

It is noteworthy that the deliberate by-pass rule of *Fay v. Noia, supra,* has recently been severely limited even in the case of alleged violations of Fifth and Sixth Amendment rights where the constitutional violation reflects on the reliability of the evidence. In *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), the claim belatedly made related to the voluntariness of a confession. In his review of *Fay v. Noia* which has now been limited to its facts, Mr. Justice Rehnquist discussed *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976) and *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) which had already intimated *Fay's* mortality. As Mr. Justice Rehnquist indicated with respect to alleged Fourth Amendment claims, "Only last Term in *Stone v. Powell,* 428 U.S. 465, [96 S.Ct. 3037, 49 L.Ed.2d 1067] (1976), the Court removed from the purview of a federal habeas court challenges resting on the Fourth Amendment, *where there has been a full and fair opportunity to raise them in the state court.*" 433 U.S at 79, 97 S.Ct. at 2502 (emphasis supplied).

tional rights of personal liberty shall not be denied without the fullest opportunity for plenary federal judicial review." 372 U.S. at 424, 83 S.Ct. at 841. Mr. Justice Brennan's dissent in *Stone* is indeed based on the premise that the exclusionary rule was a constitutional ingredient of the Fourth Amendment. Therefore, those denied the federal writ on such Fourth Amendment issues are "persons whom society has grievously wronged". *Fay v. Noia, supra,* 372 U.S. at 441, 83 S.Ct. at 850.

However, *Stone v. Powell, supra* is of major jurisprudential significance because these tenets have been reexamined and rejected. The *Stone* majority has determined that the exclusionary rule in Fourth Amendment cases is not a personal constitutional right but rather a judicially created remedy, 428 U.S. at 486, 96 S.Ct. 3037, now judicially curtailed. Hence, the rationale of *Fay* that plenary federal review is mandated to one grievously wronged by a denial of constitutional rights has been destroyed, as Mr. Justice Brennan recognized, with respect to search and seizure claims.

The majority in *Stone v. Powell, supra,* further found that while the goal of deterrence of law enforcement officials from the violation of Fourth Amendment rights supports the implementation of the exclusionary rule at trial and on direct appeal of state court convictions, "the additional contribution, if any, of the consideration of search-and-seizure claims of state prisoners on collateral review is small in relation to

the costs." Id. at 493, 96 S.Ct. at 3051. The costs include intrusions on limited judicial resources, undermining the necessary principle of finality in criminal trials, heightening of friction between the federal and state systems of justice and erosion of the doctrine of federalism.[7] See id. at 491 n. 31, 96 S.Ct. 3037. The cost is particularly high because the exclusionary rule "deflects the truthfinding process and often frees the guilty." Id. at 490, 96 S.Ct. at 3050.

In *Stone* all that the Court required was that the state have provided the *opportunity* to the state prisoner for full and fair litigation of the Fourth Amendment claim; it did not further indicate that such opportunity, if not exercised in the state court, was only lost when the defendant or his counsel deliberately and intentionally sought to by-pass the state process. Had the Court intended to so drastically qualify its rule, it certainly would have so stated. The resurrection of a now discredited *Fay* in a case such as this is indeed contrary to the Court's analysis in *Stone.* Requiring the federal court to make collateral investigations of the subjective motivation of the state prisoner which would involve the expenditure of sorely pressed federal judicial resources and exacerbate possible friction between the federal and state judiciary, is antithetical to the very factors which motivated the *Stone* majority to sharply limit the role of the federal court in Fourth Amendment state habeas procedures.[8]

7. Mr. Justice Powell had previously set forth these views in his concurring opinion in *Schneckloth v. Bustamonte,* 412 U.S. 218, 259, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973). In both *Schneckloth* and *Stone,* Mr. Justice Powell referred to Judge Henry Friendly's article, Is Innocence Irrelevant? Collateral Attacks on Criminal Judgments, 38 U.Chi.L.Rev. 142 (1970). Judge Friendly there stated that while the Fourth Amendment protects against unreasonable searches,

it is a serious confusion of thought to transpose this doctrine of substantive law into the courtroom.[91] At that stage the defendant's constitutional right is to have a full and fair opportunity to raise his claims on trial and appeal and the assistance of counsel in doing so. There is no need to find a "waiver" when the defendant or his counsel

has simply failed to raise a point in court, since the state has not deprived him of anything to which he is constitutionally entitled.
   [91] The fountainhead of this error is *Fay v. Noia,* 372 U.S. 391, 439–40, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963).
Id. at 159–60 (footnote omitted).

8. These same policy considerations militate against the panel majority's view that a *Townsend* hearing was necessary to determine if the state court had properly decided that no Fourth Amendment claim had been made. The panel opinion was critical of the conduct of the trial judge in overruling appellant's objections without articulation of reasons as well as the state appellate court's alleged unawareness or decision to ignore the appellant's constitutional claim. On this point, the observation of the

■ This very case illustrates the conceptual basis for *Stone*. Gates was convicted of murder, presumably on the basis of the finger and palmprints found at the scene of the crime. Any illegality surrounding his arrest would not render the evidence any less genuine or damning. The state court provided every opportunity for him to have raised the issue. He was vigorously represented by counsel who pressed constitutional issues to the taking of the prints but never to the legality of his arrest. Gates has never raised any issue as to the competence of his counsel. He was afforded full appellate review and further *coram nobis* procedure. No attack is mounted on the state procedure requiring that the Fourth Amendment issue be raised at trial. The Fourth Amendment objection was raised for the first time in the Court of Appeals as his then counsel conceded. To permit a hearing now eleven years later, after memories have long since dimmed, to determine what cause the police had at that time to make an arrest would be neither just to society nor effectuate the rationale of the exclusionary rule—police deterrence. The Supreme Court in *Stone* held that under these circumstances federal intrusion is unwarranted.

■ If the state provides no corrective procedures at all to redress Fourth Amendment violations, federal habeas corpus remains available. *United States ex rel. Petillo v. New Jersey,* 418 F.Supp. 686 (D.N.J. 1976) rev'd 562 F.2d 903 (3rd Cir. 1977). It may further be that even where the state provides the process but in fact the defendant is precluded from utilizing it by reason of an unconscionable breakdown in that process, the federal intrusion may still be warranted. See *Frank v. Mangum,* 237 U.S. 309, 35 S.Ct. 582, 59 L.Ed. 969 (1915);

Bator, Finality in Criminal Law and Federal Habeas Corpus for State Prisoners, 76 Harv.L.Rev. 441, 456–57 (1963). But that is not this case. *Stone v. Powell, supra,* holds that we have no authority to review the state record and grant the writ simply because we disagree with the result reached by the state courts. The basic inquiry is whether the state prisoner was given the opportunity for full and fair litigation of his Fourth Amendment claim. We find that Gates was given that opportunity and hence we affirm the district court dismissal of his petition for habeas relief.

OAKES, Circuit Judge, with whom Judges J. JOSEPH SMITH and FEINBERG concur (concurring in the result):

Two developments in the period since the panel decision was filed lead me to change my vote from one of reversal to one of affirmance. First, additional facts not mentioned in the State's brief to the panel or in its petition for rehearing and presented for the first time in conjunction with its en banc brief make it clear that appellant's trial-level objection to the admission of palmprint evidence was not based on the Fourth Amendment. Second, a recent Supreme Court decision, *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), indicates that appellant's lack of trial objection amounted to the type of state procedural default that forecloses federal habeas consideration of whether he was denied his constitutional rights. Accordingly, I concur in the judgment of the court.

I.

The only trial objection brought to the attention of the panel is the one printed in its opinion, *ante,* 568 F.2d at 845. That

---

Chief Justice in *Estelle v. Williams, supra,* is enlightening.

> Nor can the trial judge be faulted for not asking the respondent or his counsel whether he was deliberately going to trial in jail clothes. To impose this requirement suggests that the trial judge operates under the same burden here as he would in the situation in *Johnson v. Zerbst,* 304 U.S. 458, [58 S.Ct. 1019, 82 L.Ed. 1461] (1938), where the

issue concerned whether the accused willingly stood trial without the benefit of counsel. Under our adversary system, once a defendant has the assistance of counsel the vast array of trial decisions, strategic and tactical, which must be made before and during trial rests with the accused and his attorney. Any other approach would rewrite the duties of trial judges and counsel in our legal system. 425 U.S. at 512, 96 S.Ct. at 1697.

objection, as the panel majority wrote, is "regrettably ambiguous," *id.* at 845, in that it is susceptible to interpretation as either a Fourth or a Fifth Amendment claim. This ambiguity perplexed Judge Carter below as much as it perplexed the panel, and the State, responding to his injury, gave him no more information about this objection than it later gave the panel.[1] One *could* have interpreted the opinions in the state courts, both on direct appeal and on coram nobis, as necessarily meaning that no objection on Fourth Amendment grounds had been made, and perhaps the State thought that by furnishing references to those, it had done all that was necessary. To the panel majority, however, the state court opinions were simply inexplicable in view of the objection we had before us,[2] and unfortunately the State's petition for rehearing shed no further light on the problem.

When the State filed its en banc brief in this case, it also filed and referred to three key documents. The first of these was a trial transcript, which was not part of the original panel appeal record. This transcript reveals three instances other than the one called to the panel's attention in which appellant's counsel discussed the palmprint evidence, and in all of these other instances it is clear, as the quotations in the en banc majority opinion demonstrate, *ante*, 568 F.2d at 831, that the objection to the evidence was on Fifth and Sixth, not Fourth, Amendment grounds.[3] The second key document filed at the en banc stage is appellant's Appellate Division brief, in which, as the en banc majority opinion notes, *id.*, 568 F.2d at 833, points are made relating only to the Fifth and Sixth Amendments. Finally, appellant's brief in the New York Court of Appeals, also filed with us only at the en banc stage, conceded that no Fourth Amendment objection had been made at trial, a fact that explains the Court of Appeals' conclusion, puzzling to the panel majority, *see ante*, 568 F.2d at 849, that appellant had failed "even to intimate that such an issue was in the case." 24 N.Y.2d at 670, 301 N.Y.S.2d at 601, 249 N.E.2d at 452.

---

1. Judge Carter had asked counsel, by letter dated February 10, 1976:

    1. Is it true, as the portions of the record quoted by [defense counsel] seem to show, that objection was made at trial to the admission of the evidence in question?

    By letter dated March 2, 1976, the State answered this question in part as follows:

    The objections referred to are catch-all constitutional objections on constitutional grounds. Nowhere in the colloquy cited by petitioner is the specific grounds of the objection set forth. Nowhere in the colloquy is the Fourth Amendment even mentioned. The objection could have been made on other (Fifth Amendment) grounds, for example.

2. Judge Carter had also found the state court opinions inexplicable. In the letter cited in note 1 *supra*, he asked a second question referring to the objection before him:

    2. If such objections was made, how is it that three New York State courts' decisions were premised on the belief that such objection was not made?

    The State's response to this second question was in essence that the state courts had ignored the apparent objection because they thought it "inadequate under state law to preserve the issue for appeal." As the panel majority pointed out, however, none of the state opinions *said* that the objection was inade-

quate; from what the State had told Judge Carter and the panel, it appeared that the state courts had simply ignored the objection. We thus stated:

    [I]f the state courts were holding, as the court below believed, that the objection appellant *did make* was inadequate for state law purposes, the normal and proper course would have been for them to state that holding and supporting reasons. *Cf. Arlinghaus v. Ritenour*, 543 F.2d 461, 464 (2d Cir. 1976) (per curiam) ("A decisionmaker obliged to give reasons to support his decision may find they do not; 'the opinion will not write.'"). Since they made no such statement, it remains inappropriate for a federal court to dismiss a habeas petition on the basis of pure speculation as to what the state courts might implicitly have been holding.

    *Ante*, 568 F.2d at 849.

3. These objections place in a more coherent context the fact that the objection before the panel, *ante*, 568 F.2d at 850, was "to the mere fact of the taking of the prints". In the State's original brief to the panel, no help on this point was provided, the State arguing simply that the objection was insufficiently specific and that it "could have been on Fifth Amendment grounds." Brief for Respondent-Appellees at 13. *See also* note 1 *supra*.

## II.

These three documents, not presented to the panel, are convincing proof that appellant did not make a Fourth Amendment objection at trial. This lack of objection means that appellant did not even attempt to invoke the New York procedure available at that time for obtaining the suppression of evidence, N.Y.Code Crim.Proc. §§ 813–c, 813–d (predecessor to N.Y.Crim.Proc.Law § 710.40 (McKinney 1971 & Cum.Supp. 1976–77)), and this alone might bar his federal habeas claim under our holding in *United States ex rel. Tarallo v. LaVallee,* 433 F.2d 4, 7–8 (2d Cir. 1970), *cert. denied,* 403 U.S. 919, 91 S.Ct. 2235, 29 L.Ed.2d 697 (1971). *See LiPuma v. Commissioner,* 560 F.2d 84, 88–90 (2d Cir. 1977). A legitimate inquiry prior to the Supreme Court's most recent Term, nevertheless, was whether appellant's failure to object amounted to a deliberate bypass of "the orderly procedure of the state courts", *Fay v. Noia,* 372 U.S. 391, 438, 83 S.Ct. 822, 849, 9 L.Ed.2d 837 (1963), or whether instead it was an inadvertent omission, entirely unrelated to trial strategy, *see Kibbe v. Henderson,* 534 F.2d 493, 496–97 (2d Cir. 1976), *rev'd on other grounds,* 431 U.S. 145, 97 S.Ct. 1730, 52 L.Ed.2d 203 (1977).

Contrary to the suggestion in the en banc majority opinion, *ante,* 568 F.2d at 831; *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), in my view did not overrule *Fay v. Noia* with respect to the deliberate bypass standard. *See O'Berry v. Wainwright,* 546 F.2d 1204, 1219–24 (5th Cir.) (Goldberg, J., dissenting), *cert. denied,* 433 U.S. 911, 97 S.Ct. 2981, 53 L.Ed.2d 1096 (1977). Indeed, by citing to *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), in its summary of the "opportunity for full and fair litigation" test, 428 U.S. at 494 n.36, 96 S.Ct. at 3045–3046, the

*Stone* opinion appears to consider *Fay v. Noia* of some importance, since *Townsend* contains a crucial citation, to *Fay,* 372 U.S. at 317, 83 S.Ct. 822. Two other decisions from the Supreme Court's 1975 Term, *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), and *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976), could have been read as undercutting *Fay's* deliberate bypass standard, *see Estelle,* 425 U.S. at 526, 96 S.Ct. 1691 (Brennan, J., dissenting); *Francis,* 425 U.S. at 545–47, 552–53 & n.4, 96 S.Ct. 1708 (Brennan, J., dissenting), but the Court, which had ample opportunity, certainly did not say that it was affecting *Fay* in any way.[4] Until the Supreme Court spoke more definitively, we as an inferior court were bound by *Fay v. Noia,* and thus the panel majority applied the deliberate bypass standard.

The Supreme Court has now spoken more definitively. In *Wainwright v. Sykes, supra,* the Court stated that *Francis,* had significantly restricted *Fay's* "dicta" concerning deliberate bypass. 433 U.S. at 85, 97 S.Ct. at 2505. In the context of a failure to object at trial to admission of a confession, a failure that precluded later state relief under the state's contemporaneous objection rule, the Court held in *Wainwright* that federal habeas relief was also precluded by the operation of such a rule. In the process the Court "reject[ed]" the "sweeping language of *Fay v. Noia,*" which language went, in the Court's view, "far beyond the facts of the case eliciting it". *Id.* at 88, 97 S.Ct. at 2507. *Wainwright's* discussion of problems with *Fay's* deliberate bypass test, *id.,* is underscored by its adoption of a sweeping rule, first used in a more limited context in *Francis v. Henderson, supra,*[5] under which a bypass of state

---

4. This fact led some commentators to question whether the Court was exercising its power responsibly. *See* P. Bator, P. Mishkin, D. Shapiro & H. Wechsler, *Hart and Wechsler's The Federal Courts and the Federal System* 356–58 (2d ed. Supp. 1977).

5. The rule announced in *Francis* was expressly applicable only to the issue of timely challenges

to grand juries. The principal concern of the Supreme Court was with not having different, more stringent standards on collateral review of state convictions challenged on grand jury-related grounds than it had with regard to collateral review of federal convictions challenged on the same grounds. *See* 425 U.S. at 541–42, 96 S.Ct. 1708. As to the latter, the Court had held in *Davis v. United States,* 411

procedures forecloses all habeas relief unless both prejudice from the alleged state error and cause for the bypass are shown, 425 U.S. at 542, 96 S.Ct. 1708. In the instant case, while actual prejudice from the evidence's admission might be shown, compare 433 U.S. 92–93 at 2509 (substantial other evidence of guilt in *Wainwright*) with panel op., *ante*, 568 F.2d at 845, (recognition by New York court of critical importance of print evidence to appellant's conviction), there is no explanation for the failure to object, *see*, 433 U.S. at 88–90, 97 S.Ct. 2507–2508.[6] Appellant's Fourth Amendment claim is therefore not cognizable in a federal habeas court under the *Francis-Wainwright* standard.

### III.

Although this case can now be resolved on the basis of appellant's failure to comply with New York's contemporaneous objection rule, the en banc majority opinion goes on to discuss extensively the ramifications of *Stone v. Powell.* In light of this, a brief discussion of the *Stone* test of "an opportunity for full and fair litigation of a Fourth Amendment claim," 428 U.S. at 482, 96 S.Ct. at 3045–3046, is necessary. My principal concern is with the en banc majority opinion's statement that federal habeas consideration of a Fourth Amendment claim is only warranted if either "the state provides no corrective procedures at all" or "the defendant is precluded from utilizing [the state procedures] by reason of an unconscionable breakdown in that process". *Ante*, 568 F.2d at 840.

U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), that grand jury challenges not raised before the federal trial, which are therefore deemed waived, absent a showing of cause under Fed. R.Crim.P. 12(b)(2), (f), could not be raised on collateral review absent a showing of both cause and actual prejudice, 411 U.S. at 243–45, 93 S.Ct. 1577. Hence *Francis* derived directly from a narrow federal rule of procedure and appeared to be designed merely to ensure symmetry in the law, a conclusion underscored by its failure to discuss *Fay v. Noia. See* panel op., *ante*, 568 F.2d at 851, *O'Berry v. Wainwright*, 546 F.2d 1204, 1223 (5th Cir.) (Goldberg, J., dissenting) (*Francis* is "sui generis"), *cert. denied*, 433 U.S. 911, 97 S.Ct. 2981, 53 L.Ed.2d 1096 (1977).

While these two situations are unquestionably ones in which the requisite *Stone* "opportunity" has not been given a defendant, they do not, I believe, cover the entire range of cases in which such an opportunity might be found lacking. An example is provided by the case with which the panel majority here thought we were dealing, one in which an objection had seemingly been ignored by several state courts, in apparent violation of those courts' own rules. *See* panel op., *ante*, 568 F.2d at 847 & n.3 849. A federal habeas judge might term such ignoring of a Fourth Amendment claim "unconscionable" in the en banc majority opinion's terms, but, without additional facts, such terminology would be unfortunate[7] in a case in which the habeas judge really meant only that there had been no "meaningful inquiry by the state courts" into the defendant's asserted claim, Bator, *Finality in Criminal Law and Federal Habeas Corpus for State Prisoners,* 76 Harv.L. Rev. 441, 457 (1963). *Cf. United States v. Robinson,* 560 F.2d 507 (2d Cir., 1977) (en banc) (Gurfein, *J.,* dissenting) (problem of appellate court being forced to call trial judge "arbitrary" or "irrational" when it means something less serious).

I believe that the Supreme Court in *Stone v. Powell,* had it intended to apply as stringent an "opportunity" test as that suggested by the en banc majority opinion, would have said so in unambiguous terms. Instead, the Court repeatedly used quite gen-

6. The most likely explanation is one relating to negligence or inadvertence on the part of trial counsel. Such an explanation was apparently also involved in *Wainwright v. Sykes,* however, *see,* 433 U.S. at 99, 97 S.Ct. 2513 (Brennan, J., dissenting); *but see id.* at 94–97, 97 S.Ct. 2497. (Stevens, J., concurring), yet the Court held that the petitioner there had not met the *Francis* "cause" standard, *id.* at 90, 97 S.Ct. 2497.

7. This choice of words would not exactly assist the very type of harmony between state and federal courts, based on a recognition of the competence of state courts, with which *Stone v. Powell* was concerned. *See* 428 U.S. at 493–94 n.35, 96 S.Ct. 3037.

eral language. *See* 428 U.S. at 480, 482, 486, 489, 494, 495 n.37, 96 S.Ct. 3037. I take it from this that what the Court was really indicating is that each case must be examined on its particular facts. The term "fair," used so often in *Stone,* implies such an examination, connoting as it does a role for equitable discretion. The federal courts that have been faced with Fourth Amendment habeas claims after *Stone* have all viewed the question before them as whether, in the individual case, the state courts had in fact meaningfully considered the defendant's claim.[8] I would follow these decisions and require the district court to make an examination of individual circumstances, with the standard for testing the defendant's treatment in the state courts simply the one given to us by the Supreme Court: whether the defendant had an opportunity for full and fair litigation of his Fourth Amendment claim, having in mind now that, where there is a failure to object at trial, there must, in addition to prejudice, be at least a satisfactory explanation therefor under *Wainwright v. Sykes, supra,* 433 U.S. at 88–94, 97 S.Ct. 2507–2510.

I concur in the judgment.

J. JOSEPH SMITH, Circuit Judge (concurring and joining in opinion of Judge OAKES):

I concur in the judgment and join in the opinion of Judge Oakes, concurring in the result.

FEINBERG, Circuit Judge (concurring and joining in opinion of Judge OAKES):

I concur in the judgment and join in the opinion of Judge Oakes, concurring in the result.

## APPENDIX
### Opinion of the Panel

Before SMITH, OAKES and TIMBERS, Circuit Judges.

OAKES, Circuit Judge:

Had this appeal been before us one year ago, it would have been relatively easy to resolve. Three Supreme Court decisions in the spring and summer of 1976, while perhaps intended to simplify the federal courts' labors as to habeas corpus petitions brought by state prisoners, have instead complicated analysis in the instant case. The United States District Court for the Southern District of New York, Robert L. Carter, *Judge,* dismissed appellant's petition under 28 U.S. C.A. § 2254 on the ground that appellant had failed adequately to raise, for New York state law purposes, his Fourth Amendment claim in the state courts. After some struggle to understand the implications of the recent High Court cases, we have concluded that we must reverse.

### Facts

The facts are essentially undisputed. In September, 1966, appellant's estranged wife died of multiple stab wounds sustained in her apartment in Spring Valley, New York. Before losing consciousness, she responded to a neighbor's inquiry as to whether her husband had been the assailant by saying, "I don't know, but he wore glasses," as did

8. *See, e. g., O'Berry v. Wainwright, supra,* 546 F.2d at 1215–16; *Bracco v. Reed,* 540 F.2d 1019, 1020 (9th Cir. 1976) ("No claim is made here that Bracco did not have a full and fair hearing in the Oregon court"); *Chavez v. Rodriquez,* 540 F.2d 500, 502 (10th Cir. 1976) (per curiam) (noting that the issue is "whether the state of New Mexico provided Chavez an opportunity for full and fair litigation"; he had a suppression hearing—"We have reviewed the state court transcript and find that this hearing was full and adequate"); *George v. Blackwell,* 537 F.2d 833, 834 (5th Cir. 1976) (per curiam) ("A review of the record in this case demonstrates beyond doubt that appellee received a full and fair hearing in the state court . ..."); *Losinno v. Henderson,* 420 F.Supp. 380, 382 (S.D.N.Y.1976) (Weinfeld, J.) (question whether " 'an opportunity for full and fair litigation' of such claim was afforded petitioner in the state courts"; careful consideration of petitioner's state court treatment); *Pulver v. Cunningham,* 419 F.Supp. 1221, 1224 (S.D.N.Y.1976) (Ward, J.) (citing *Townsend v. Sain* and considering trial and appellate hearings in petitioner's case), *appeal docketed,* No. 76–2133 (2d Cir. Oct. 15, 1976). I have not located any case *contra.* In *United States ex rel. Petillo v. New Jersey,* 418 F.Supp. 686, 688–89 (D.N.J.1976), the court did not have to reach this issue because it found inadequate the entire state procedure with regard to certain types of Fourth Amendment claims.

appellant. Just 45 minutes later, appellant's car was stopped ten miles from the scene of the stabbing for an offense entirely unconnected with the stabbing, failure to dim his headlights. For reasons that are obscure, the officer who stopped appellant, after taking his driver's license and registration, arrested him in connection with the stabbing.

Appellant was subsequently charged with first-degree murder, convicted by a jury in Rockland County Court, and sentenced to a prison term of from 20 years to life. The evidence at his trial was entirely circumstantial, consisting primarily of threats he had made against his wife and a set of fingerprints and palmprints found on the apartment's bathroom windowsill, through which the assailant apparently entered the dwelling. Some of the prints matched appellant's prints, which were taken by the police a few hours after appellant's arrest. In reviewing the sufficiency of the evidence on which appellant was convicted, the New York Court of Appeals, expressing doubt whether the threats alone would have been sufficient, upheld the conviction because of "the almost conclusive force of the fingerprint evidence . . . [which] pointed ineluctably to the defendant's guilt . . .." *People v. Gates,* 24 N.Y.2d 666, 669, 301 N.Y.S.2d 597, 600, 249 N.E.2d 450, 451–52 (1969).

Appellant's trial counsel objected to the introduction of appellant's prints, taken at the police station following his arrest. Counsel did so, however, on grounds that were regrettably ambiguous, and this ambiguity has led to the instant litigation. Out of the presence of the jury, defense counsel had the following colloquy with the trial judge:

Defense Counsel: While there is no question, and we will stipulate, that [the prints] were taken of the defendant in this case, we raise objection not to the fact that they are or are not his prints but to the introduction of those prints on the basis that this man's constitutional rights both under the State and Federal Constitutions have been violated by the taking of these prints and as such we object to them.

The Court: Your objection is then on constitutional grounds to the mere fact of the taking of the prints?

Counsel: Yes, sir.

The Court: As such?

Counsel: Right, sir.

The Court: I will overrule that objection.

Counsel: Exception.

The Court: And you will have a similar objection, without having to renew it, for the record to any further introduction of prints taken of the defendant by any other law enforcement officer.

Counsel: Fine, sir.

The Court: And with the same ruling.

It is not clear whether counsel was objecting on Fifth Amendment grounds, that being compelled to be fingerprinted was "to be a witness against himself," *compare Boyd v. United States,* 116 U.S. 616, 633–34, 6 S.Ct. 524, 534, 29 L.Ed.2d 746 (1886) (compelling production of private papers may violate Fifth Amendment), *and Malloy v. Hogan,* 378 U.S. 1, 8, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964) (Fifth Amendment's self-incrimination clause applies to states), *with Schmerber v. California,* 384 U.S. 757, 764, 86 S.Ct. 1826, 16 L.Ed.2d 908 (1966) (compelling blood test, fingerprinting, photographing, etc., does not violate Fifth Amendment); or on Fourth Amendment grounds, that fingerprints obtained after an arrest made without probable cause were inadmissible, *see Davis v. Mississippi,* 394 U.S. 721, 723–24, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969); or on both, *see Boyd v. United States, supra,* 116 U.S. at 633, 6 S.Ct. 524. The ambiguity is there even though the objection was made some six months after *Schmerber, supra,* which made it unavailing if on grounds of the Fifth, and over two years before *Davis,* which made it clearly availing on grounds of the Fourth.[1]

Appellant's conviction was affirmed by both New York's Appellate Division, 29 A.D.2d 843, 288 N.Y.S.2d 862 (1968) (mem.),

---

1. Counsel had previously objected in open court to a question calling for the arresting officer's description of appellant's right hand as observed at the station in the fingerprinting

and Court of Appeals, *supra.* The latter court, with the benefit of *Davis v. Mississippi, supra,* to which it referred, recognized

> process, also on vague "constitutional grounds," an objection that could likewise have gone either to the Fourth or to the Fifth Amendment or to both. The objection was similarly overruled by the trial court.

2. The New York Court of Appeals stated:

> In the light of the Supreme Court's recent decision in *Davis v. Mississippi,* 394 U.S. 721 [89 S.Ct. 1394, 22 L.Ed.2d 676] there can be no doubt that fingerprint evidence is "subject to the proscriptions of the Fourth and Fourteenth Amendments" and that such evidence is to be excluded if it be the product of an illegal arrest (394 U.S., at p. 724 [89 S.Ct. at p. 1396]).

*People v. Gates,* 24 N.Y.2d 666, 670, 301 N.Y. S.2d 597, 601, 249 N.E.2d 450, 452 (1969). The court's statement is ambiguous as to whether it viewed *Davis* as establishing a new rule of law retroactively binding in appellant's case—the fingerprinting and trial of appellant occurred prior to *Davis*—or whether it viewed *Davis* as merely clarifying established New York or federal constitutional law. The latter interpretation seems the most likely one in light of the *Davis* opinion:

> [I]n *Mapp v. Ohio,* 367 U.S. 643, 655 [81 S.Ct. 1684, 6 L.Ed.2d 1081] (1961), we held that "*all* evidence obtained by searches and seizures in violation of the Constitution is, by that same authority, inadmissible in a state court." (Italics supplied.) Fingerprint evidence is no exception to this comprehensive rule.

394 U.S. at 724, 89 S.Ct. at 1396.

Despite the Court of Appeals' statement that *Davis* was applicable to appellant's case, the Rockland County Court ruled, in appellant's later *coram nobis* action, that *Davis* had "prospective effect only." *People v. Gates,* 61 Misc.2d 250, 254, 305 N.Y.S.2d 583, 588 (1969), *aff'd on other grounds,* 36 A.D.2d 761, 319 N.Y.S.2d 569 (1971). This ruling is inconsistent not only with the implication of the *Davis* opinion and the holding of New York's highest court, but also with *Mills v. Wainwright,* 415 F.2d 787, 790 (5th Cir. 1969), applying *Davis* to fingerprinting following an illegal arrest occurring prior to the date *Davis* was decided, as well as other cases assuming *Davis* to be applicable retroactively, *see, e. g., Hamrick v. Wainwright,* 465 F.2d 940, 942–43 (5th Cir. 1972); *United States ex rel. Dessus v. Pennsylvania,* 452 F.2d 557, 561 (3d Cir. 1971), *cert. denied,* 409 U.S. 853, 93 S.Ct. 184, 34 L.Ed.2d 96 (1972); *United States v. Aloisio,* 440 F.2d 705, 710–11 (7th Cir.), *cert. denied,* 404 U.S. 824, 92 S.Ct. 49, 30 L.Ed.2d 51 (1971); *United States v. Seay,* 432 F.2d 395, 400 (5th Cir. 1970), *cert.*

that fingerprint evidence that is the fruit of an arrest without probable cause must be excluded,[2] but held that appellant had

*denied,* 401 U.S. 942, 91 S.Ct. 949, 28 L.Ed.2d 223 (1971). Judge Carter below concluded:

> *Davis* did not enunciate a new doctrine, but merely extended the exclusionary rule of *Mapp v. Ohio.* . . . The *Davis* decision . . . described an existing rule of law. Thus, there is no issue here of applying a new rule retroactively.

*United States ex rel. Gates v. Henderson,* No. 73 Civ. 3865 (S.D.N.Y. May 27, 1976), slip op. at 2 n. 2. On this appeal, the State has agreed with—and indeed emphasizes the correctness of—the district court's conclusion. Brief for Respondent-Appellee at 20.

Some question might possibly be raised about this conclusion in view of *United States v. Peltier,* 422 U.S. 531, 95 S.Ct. 2313, 45 L.Ed.2d 374 (1974), holding *Almeida-Sanchez v. United States,* 413 U.S. 266, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973) (border patrol searches), inapplicable retroactively. The *Peltier* Court emphasized, however, that an exclusionary rule holding will be given solely prospective effect only "if law enforcement officials reasonably believed in good faith that their *conduct* was in accordance with the law . . . ." 422 U.S. at 538, 95 S.Ct. at 2317 (emphasis in original); *see id.* at 541, 95 S.Ct. 2313 (conduct of officers in *Peltier* had received "continuous judicial approval"). *Peltier* thus evidently does not affect the retroactivity of decisions that clarify or extend, rather than overrule or sharply change, existing law. *United States v. Martinez,* 526 F.2d 954, 955, 956 (5th Cir. 1976) (opinion on rehearing) (petition for rehearing en banc denied, 9–5); *People v. Morales,* 52 A.D.2d 818, 824, 383 N.Y.S.2d 608, 615 n.* (1976) (Murphy, J., dissenting) (issue not reached by majority). *But see United States v. Peltier, supra,* 422 U.S. at 544–49 & n. 5, 95 S.Ct. 2313 (Brennan, J., dissenting).

The *Davis* decision, by its own terms, was merely a clarifying decision. Moreover, the conduct in which the police engaged in *Davis* (and allegedly here), arrest without probable cause, had received repeated judicial condemnation, contrary to the situation in *Peltier,* since 1806, *Ex parte Burford,* 7 U.S. (3 Cranch) 447, 452, 2 L.Ed. 495 (1806) (Marshall, C. J.), and federal standards had been unquestionably applicable to arrests by state officers since 1963, *Ker v. California,* 374 U.S. 23, 34–35, 83 S.Ct. 1623, 10 L.Ed.2d 726 (1963), over three years before appellant's arrest. *See also Beck v. Ohio,* 379 U.S. 89, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964) (evidence taken from defendant at police station following arrest without probable cause should have been excluded at state trial).

failed to object to the print evidence on this ground. 24 N.Y.2d at 670, 301 N.Y.S.2d at 601, 249 N.E.2d at 452. The court's opinion does not in any way allude to the objection quoted above; instead, it states that appellant failed "even to intimate that such an issue was in the case." *Id.* Appellant then applied for a writ of error *coram nobis,* which was denied. 61 Misc.2d 250, 305 N.Y. S.2d 583 (Rockland County Ct. 1969). The Appellate Division affirmed, 36 A.D.2d 761, 319 N.Y.S.2d 569 (1971), and the Court of Appeals denied further leave to appeal. Neither of the opinions on *coram nobis* mentioned the objection quoted above; both assumed, without discussion, that no objection on the relevant ground had been made at trial.[3]

Appellant next petitioned the United States District Court for the Southern District of New York for a writ of habeas corpus. The court was perplexed about the lack of reference to the above-quoted objection in the three state court opinions dealing with Gates' conviction and confinement, and by letter asked counsel for clarification. Following receipt of counsel's responses, the court denied the petition, ruling that the state court opinions are "to be understood as holding that counsel's objection . . . was not sufficiently specific to raise the fruit of an unlawful arrest argument." No. 73 Civ. 3865 (S.D.N.Y. May 27, 1976), slip op. at 7.

### The Applicability of Stone v..Powell

After the district court's ruling below, the Supreme Court decided a case that bears directly on the cognizability of appellant's petition. In *Stone v. Powell,* 428 U.S. 465, 96 S.Ct. 3037, 49 L.Ed.2d 1067 (1976), the Court held "that where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search or seizure was introduced at his trial." *Id.* 428 U.S. at 494, 96 S.Ct. at 3052 (footnotes omitted). Appellant here seeks relief on precisely this ground; his claim of an absence of probable cause for his arrest is in essence a claim of unconstitutional seizure in violation of the Fourth and Fourteenth Amendments. *See Gerstein v. Pugh,* 420 U.S. 103, 111–16, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Cupp v. Murphy,* 412 U.S. 291, 294, 93 S.Ct. 2000, 36 L.Ed.2d 900 (1973). There is little doubt, moreover that the *Stone* case was intended by the Supreme Court to apply retroactively to habeas petitions then pending in the federal courts. *See* 428 U.S. at 495 n. 38, 96 S.Ct. at 3052, n. 38; *id.* 428 U.S. at 482, 96 S.Ct. at 3070 (Brennan, *J.,* dissenting); *LaVallee v. Mungo,* 428 U.S. 907, 96 S.Ct. 3215, 49 L.Ed.2d 1213 (1976) (per curiam) (vacation of judgment and remand to court of appeals for further consideration in light of *Stone* ); *Bracco v. Reed,* 540 F.2d 1019, 1020–21 (9th Cir. 1976); *Chavez v. Rodriguez,* 540 F.2d 500, 502 (10th Cir. 1976) (per curiam); *Poindexter v. Wolff,* 540 F.2d 390, 391 (8th Cir. 1976) (per curiam).

*Stone v. Powell* forecloses habeas review, however, only when the petitioner had "an

---

In view of these clear judicial statements, no New York police officer in 1966 could have "reasonably believed in good faith" that the arrest of appellant, if without probable cause, "was in accordance with the law." *United States v. Peltier, supra,* 422 U.S. at 538, 95 S.Ct. at 2318.

3. The Rockland County Court said:

It is undisputed that the objections now sought to be raised by the defendant were not asserted by him *at the time of trial .* .. It was not until argument before the Court of Appeals on February 27, 1969, two years after defendant's conviction, that he, for the first time, raised the issue of alleged violation of his Federal constitutional rights and which

he now claims requires that his judgment of conviction be vacated.

61 Misc.2d at 252, 305 N.Y.S.2d at 585–86. However, the court went on to consider *Davis v. Mississippi, supra,* but concluded that *Davis* was not to be applied retroactively. *See* note 2 *supra.* The Appellate Division stated: "Appellant never raised his Fourth Amendment claim in the trial court . . .." 36 A.D.2d at 761, 319 N.Y.S.2d at 570. It went on to hold that he had "forfeited [the] right [to raise the issue] by failing to raise the constitutional question in the trial court and then to test any adverse ruling on appeal from the judgment . . .." *Id.,* 319 N.Y.S.2d at 571.

opportunity for full and fair litigation of [his] Fourth Amendment claim," and appellant argues that he received no such opportunity here. The Court in *Stone* did not elaborate on the substance of the "opportunity" required,[4] and its various formulations of the rule provide limited assistance, *see* 428 U.S. at 481, 96 S.Ct. at 3044, *quoting Schneckloth v. Bustamonte,* 412 U.S. 218, 250, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973) (Powell, *J.,* concurring) (" 'a fair opportunity to raise and have adjudicated the question' "); 428 U.S. 480, 96 S.Ct. at 3045 ("the opportunity for full and fair consideration of [the] claim"); *id.* 428 U.S. at 465, 96 S.Ct. 3049 (rejection of claim by state courts); *id.* 428 U.S. 494 n. 37, 96 S.Ct. at 3052 n. 37 ("an opportunity for a full and fair litigation of [the] claim at trial and on direct review"). In a footnote to the summary of its holding, the Court did indicate that *Townsend v. Sain,* 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963), is of some relevance to the question whether an adequate opportunity has been provided, *see* 428 U.S. at 494 n. 36, 96 S.Ct. at 3052 n. 36, although the *"cf."* signal preceding the citation makes its exact meaning uncertain, *see A Uniform System of Citation* 7 (12th ed. 1976) ("Cf. [means] [c]ited authority supports a proposition different from that in text but sufficiently analogous to lend support. . . . *'Cf.'* should not be used without an explanatory parenthetical.")

*Townsend v. Sain, supra,* which held that an evidentiary hearing was required to determine whether a confession underlying a state court conviction was obtained involuntarily through use of "truth serum," spelled out six situations in which a state habeas petitioner is entitled to an evidentiary hearing in federal court because of the inadequacy of state fact-finding proceedings.[5] Its citation by the *Stone* Court may thus have been a suggestion that these situations are ones in which "an opportunity for full and fair litigation of a Fourth Amendment claim" is absent. Two of the *Townsend* categories seem relevant here. The first involves the state court's not making findings of fact and leaving the legal grounds for its conclusion uncertain. *See* 372 U.S. at 314, 83 S.Ct. 745. The state trial court here simply "overruled" appellant's objection, with no statement of either factual or legal grounds, and none of the reviewing courts even mentioned the objection. While appellant may not have "tendered" the constitutional issues with precision, *see id.,* we understand *Townsend* to place some obligation on state courts to articulate reasons for their decisions on federal constitutional questions.[6] In the absence of such

---

**4.** In one of the two cases consolidated in *Stone,* the petitioner had received a suppression hearing in the state trial court on his claim of an unlawful search. *See* 428 U.S. at 473 & n. 3, 96 S.Ct. at 3041 & n. 3. In the other case, the petitioner's Fourth Amendment claim hinged on whether a vagrancy ordinance was unconstitutional. *See id.* 428 U.S. at 473, 96 S.Ct. at 3039. Since this contention was legal, not factual, in nature, a formal suppression hearing was apparently not held.

**5.** The six situations are:
1. Where the state court has not made adequate factual or legal findings to support its conclusion, 372 U.S. at 313–16, 83 S.Ct. 745.
2. Where the state factual determinations are "not fairly supported by the record," *id.* at 316, 83 S.Ct. at 758.
3. Where "serious procedural errors" have been employed in the factfinding process, *id.;*
4. Where newly discovered evidence bearing upon the constitutionality of the detention is alleged in a habeas application, *id.* at 317, 83 S.Ct. 745.
5. Where "evidence crucial to the adequate consideration of the constitutional claim was not developed at the state hearing," unless there was "inexcusable" default under *Fay v. Noia,* 372 U.S. 391, 438, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963), 372 U.S. at 317, 83 S.Ct. at 759; and
6. Where—open-endedly—"the state court has not after a full hearing reliably found the relevant facts," *id.* at 318, 83 S.Ct. at 759.

**6.** It could be argued that, among the functions served by a statement of reasons at a state court hearing, the statement may help litigants to clarify the grounds for their constitutional objections. For example, the trial judge here might have told appellant's counsel, "I overrule your objection on the basis that the Fifth Amendment's protection against testimonial compulsion does not extend to fingerprints." Counsel might then have clarified his objection by indicating that his concern was a Fourth,

reasons, a habeas petitioner cannot be said to have received "even . . . the semblance of a full and fair hearing." *Id.* at 313, 83 S.Ct. at 757.

A second *Townsend* category, perhaps more significant here, is one in which, "for any reason not attributable to the inexcusable neglect of petitioner, see *Fay v. Noia,* 372 U.S. [391], 438 [83 S.Ct. 822, p. 848, 9 L.Ed.2d 837 (1963)], evidence crucial to the adequate consideration of the constitutional claim was not developed at the state hearing . . .." 372 U.S. at 317, 83 S.Ct. at 759. The evidence crucial to appellant's claim was that relating to the circumstances surrounding his arrest, and it is clear that this evidence was not developed at all, *see People v. Gates, supra,* 24 N.Y.2d at 668 n. 2, 670, 301 N.Y.S.2d at 599 n. 2, 601, 249 N.E.2d at 451 n. 2, 452. A question of considerable importance, however, is whether appellant's failure to specify the precise ground for his constitutional objection constitutes "inexcusable neglect" as the term was used in *Townsend, supra. Fay v. Noia,* it will be recalled, granted the federal district court a "[n]arrowly circumscribed" power to "deny relief to an applicant who has deliberately by-passed the orderly procedure of the state courts," 372 U.S. at 438, 83 S.Ct. at 849, the term "inexcusable neglect" is not to be found in that case.

### State Procedural Default

The district court concluded that appellant's objection was not "sufficiently specific" for state law purposes and ruled that this state procedural ground precluded the granting of federal habeas relief. Slip op. at 7–9. This conclusion, that the state courts held the objection insufficiently specific, however, is doubtful. None of the three state opinions even mentioned the objection cited by appellant here; it was only from this silence that the district court drew the inference that the objection was insufficiently specific. But it is at least equally plausible that the state courts were

not aware of, or for some reason chose to ignore, appellant's objection. Whatever the adequacy of the objection, it certainly "intimated" that the Fourth Amendment might be an issue, especially since the Fifth Amendment claim had already been foreclosed by *Schmerber, supra,* yet the New York Court of Appeals stated that appellant "fail[ed] . . . even to intimate that such an issue was in the case . . .." 24 N.Y.2d at 670, 301 N.Y.S.2d at 601, 249 N.E.2d at 452. *See also* note 3 *supra.*

The Court of Appeals' statement in the opinion on appellant's direct appeal is especially difficult to fathom in view of its own earlier statement (in a case cited in that opinion) that merely "some effort in th[e] direction" of a Fourth Amendment objection is sufficient to preserve the question for appellate review. *People v. Friola,* 11 N.Y.2d 157, 159, 227 N.Y.S.2d 423, 424, 182 N.E.2d 100, 101 (1962). *See also United States ex rel. Vanderhorst v. LaVallee,* 417 F.2d 411, 412 (2d Cir. 1969) (en banc) (citing New York authority for propositions that " 'no exception is necessary to preserve for appellate review a deprivation of a fundamental constitutional right' " and that "a constitutional issue may be raised for the first time on appeal in New York"), *cert. denied,* 397 U.S. 925, 90 S.Ct. 930, 25 L.Ed.2d 105 (1970). *See also People v. Patterson,* 39 N.Y.2d 288, 383 N.Y.S.2d 573, 347 N.E.2d 898 (1976) (no objection necessary to preserve constitutional claim), *cert. granted, Patterson v. N. Y.,* 429 U.S. 813, 97 S.Ct. 52, 50 L.Ed.2d 72 (1976). Moreover, if the state courts were holding, as the court below believed, that the objection appellant did make was inadequate for state law purposes, the normal and proper course would have been for them to state that holding and supporting reasons. *Cf. Arlinghaus v. Ritenour,* (2d Cir. 1976) (per curiam), 543 F.2d 461, 464 ("A decisionmaker obliged to give reasons to support his decision may find they do not; 'the opinion will not write.' "). Since they made no such statement, it remains inappropriate for a federal

---

not a Fifth, Amendment one, relating to the fruits of an unlawful arrest. *Cf. Henry v. Mississippi,* 379 U.S. 443, 448, 85 S.Ct. 564, 13

L.Ed.2d 408 (1965) (trial judge can seek elaboration of objections to introduction of evidence).

court to dismiss a habeas petition on the basis of pure speculation as to what the state courts might implicitly have been holding. *See Townsend v. Sain, supra,* 372 U.S. at 314–16, 83 S.Ct. 745. Nothing in *Stone v. Powell* affects this aspect of the federal courts' obligations.

Even if the holding as to state law were explicit, moreover, it does not follow that this state procedural ground would give the district court power to deny federal habeas relief. Under *Fay v. Noia, supra,* such power exists only if the procedural default in the state courts amounted to a "deliberate bypass" of state procedures. 372 U.S. at 438, 83 S.Ct. 822. *See also Lefkowitz v. Newsome,* 420 U.S. 283, 290 n. 6, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975). Under that test, the federal habeas court must make an "independent determination" that the habeas petitioner—assisted by counsel but making the final decision himself—"understandingly and knowingly forewent the privilege of seeking to vindicate his federal claims in the state courts  . . .." 372 U.S. at 439, 83 S.Ct. at 849. *See also id.* at 433–37, 83 S.Ct. 822.[7] No such determination was made by the district court here, nor is there any indication in the record that appellant knowingly waived his federal claims. On the contrary, his counsel was at least asserting *some* constitutional claim in respect to the evidence by his objection; doubtless appellant would have thought such an assertion procedurally sufficient. Given the vital importance of the fingerprint evidence to the State's case, it would have been senseless for appellant to have waived any available objection to the admission of the evidence. No trial tactic by anyone could conceivably involve omission to make such an objection. This court has recently held that failure to object at all to a charge to the jury did not constitute deliberate bypass, when the petitioner's trial strategy indicated that the lack of objection was inadvertent. *Kibbe v. Henderson,* 534 F.2d 493, 496–97 (2d Cir. 1976), *petition for cert. granted,* 429 U.S. 815, 97 S.Ct. 55, 50 L.Ed.2d 74 (1976). It follows a fortiori that, when a lack of objection would have been virtually fatal to the petitioner's case, and when an objection was in fact made on constitutional grounds, the petitioner cannot be said, in the absence of clear evidence of a knowing waiver, to have deliberately bypassed the state courts.[8]

The State argues, however, that the *Fay* deliberate bypass rule has been modified by two recent Supreme Court decisions, *Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976), and *Francis v. Henderson,* 425 U.S. 536, 48 L.Ed.2d 149 (1976). But nothing in either decision purports to affect *Fay* in any way, although the dissenting opinions suggest a sub silentio modification of *Fay, see* 425 U.S. at 521–528, 96 S.Ct. at 1702–1704 (Brennan, *J.,* dissenting); 425 U.S. at 542–557, 96 S.Ct. at 1711–1719 (Brennan, *J.,* dissenting). *See also Stone v. Powell, supra,* 428 U.S. at 516 n. 12, 96 S.Ct. at 3062 n. 12 (Brennan, *J.,* dissenting); note 7 *supra.*

In *Estelle* the habeas petitioner did not object at trial to being tried in prison garb, and the Court ruled that, because he had not been *compelled* to stand trial so attired, his petition should not have been granted. While the exact ground of the Court's deci-

---

7. While the "deliberate bypass" language of *Fay* was reaffirmed as late as 1975 in *Lefkowitz v. Newsome,* 420 U.S. 283, 290 n. 6, 95 S.Ct. 886, 43 L.Ed.2d 196 (1975), that language could conceivably be under reexamination by the Court. *See Estelle v. Williams,* 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126 (1976) (Powell, *J.,* concurring) (" 'inexcusable procedural default' " in connection with a "trial-type right"); *id.* at 4616 n. 5 (Brennan, *J.,* dissenting); *Francis v. Henderson,* 425 U.S. 536, 96 S.Ct. 1708, 48 L.Ed.2d 149 (1976) (Brennan, *J.,* dissenting). *But see* text at notes 8–9, *infra.*

8. The State asserts in its brief that *United States ex rel. Tarallo v. LaVallee,* 433 F.2d 4 (2d Cir. 1970), *cert. denied,* 403 U.S. 919, 91 S.Ct. 2235, 29 L.Ed.2d 697 (1971), is controlling here. We believe that case is distinguishable, however, because the petitioner there made no objection at all on constitutional grounds when the evidence allegedly seized illegally was originally introduced at trial, *id.* at 7, so that his later objection was untimely. Here there is no question that appellant seasonably objected "on constitutional grounds." It is specificity, not timeliness, that is at issue here.

sion is somewhat obscure, *see* 425 U.S. at 522, 96 S.Ct. at 1702 (Brennan, *J.,* dissenting), the thrust of the majority opinion goes to "compulsion," rather than to waiver. *See.id.* 425 U.S. at 502–504, 511, 96 S.Ct. at 1692–1693, 1696. Mr. Justice Powell, in a concurring opinion joined by Mr. Justice Stewart, did argue that a failure to object "at a time when a substantive right could have been protected" should be treated the same as a knowing waiver, *id.* 425 U.S. at 513, 96 S.Ct. at 1697, but his opinion makes apparent that he is referring to a situation in which counsel failed entirely to object, *id.,* when fully aware of clear constitutional grounds on which he could have objected, *id.* & n. 1. By contrast, appellant's counsel here did raise an objection, was probably not fully aware of the constitutional grounds available to him (because *Davis v. Mississippi, supra,* had not yet been decided), and, as discussed above, could not conceivably have made a "tactical choice" to decline to object on any ground remotely likely to succeed.

*Francis v. Henderson, supra,* rests upon a concern with placing habeas petitioners from state judgments on an equal footing with those from federal judgments with regard to challenges to the composition of grand juries. Following *Davis v. United States,* 411 U.S. 233, 93 S.Ct. 1577, 36 L.Ed.2d 216 (1973), the Court ruled that a state petitioner who failed to make a "timely challenge" to the grand jury's composition could not challenge the composition in a federal habeas proceeding. 425 U.S. at 536–541, 96 S.Ct. at 1708–1711. The opinion states:

> If, as *Davis* held, the federal courts must give effect to [specified grand jury-related] concerns in [28 U.S.C.] § 2255

proceedings, then surely considerations of comity and federalism require that they give no less effect to the same clear interests when asked to overturn state criminal convictions.

*Id.* 425 U.S. at 541, 95 S.Ct. at 1711. The Court did not go beyond this narrow rationale to the broader *Fay v. Noia* waiver question, despite the majority's clear awareness, from the dissenting opinion, of the broader ground available. It would be inappropriate for us, as a lower court, to speculate about what *Francis v. Henderson* "really means" or about what the Supreme Court may do in the next case. Except as modified narrowly by *Francis* as to grand jury challenges, *Fay v. Noia* remains good law, and, as the Supreme Court has recently reminded us, "[o]ur institutional duty is to follow until changed the law as it now is . . . .," *Hudgens v. NLRB,* 424 U.S. 507, 518, 96 S.Ct. 1029, 1036, 47 L.Ed.2d 196 (1976).

We therefore conclude that appellant did not commit the sort of procedural default that would bar him from asserting a federal claim in this collateral proceeding. It follows under *Townsend v. Sain, supra,* that the state courts' failure to develop evidence crucial to appellant's claim deprived him of a state opportunity fully and fairly to litigate it. Because such an opportunity is a critical precondition to the application of *Stone v. Powell, supra,* that case does not operate here to prevent the district court from reaching the merits of appellant's Fourth Amendment claim. Our analysis above also indicates that the district court erred in holding that New York procedural requirements barred federal consideration of appellant's claim on a petition for habeas corpus.[9]

---

9. The State argues that appellant failed to exhaust his state remedies, as he is required to do by 28 U.S.C. § 2254(b). A state prisoner must present to the state courts "the substance" of his federal claim, although he need not "cit[e] 'book and verse on the federal constitution.'" *Picard v. Connor,* 404 U.S. 270, 278, 92 S.Ct. 509, 513, 30 L.Ed.2d 438 (1971), *quoting Daugharty v. Gladden,* 257 F.2d 750, 758 (9th Cir. 1958); *see, e. g., United States ex rel. Gibbs v. Zelker,* 496 F.2d 991, 993–94 (2d Cir. 1974);

*Mayer v. Moeykens,* 494 F.2d 855, 858–59 (2d Cir.), *cert. denied,* 417 U.S. 926, 94 S.Ct. 2633, 41 L.Ed.2d 229 (1974). Presentation to the state courts, however, has not been construed to mean presentation at every level of the state court system; it is sufficient for exhaustion purposes if a federal issue is first raised on a state appeal. *See Picard v. Connor, supra,* 404 U.S. at 273–74, 276, 92 S.Ct. 509 (by implication); *United States ex rel Nelson v. Zelker,* 465 F.2d 1121, 1124 (2d Cir.), *cert. denied,* 409

852

Accordingly, the judgment of the district court is reversed and the cause remanded for a hearing on the merits of appellant's claim.[10]

TIMBERS, Circuit Judge, dissenting:

Judge Carter's eminently correct decision below denying this state prisoner's petition for a writ of habeas corpus should have been affirmed in a one sentence order reading, "Affirmed on the authority of *Stone v. Powell,* 428 U.S. 465 (1976)." From the majority's refusal to do so, I respectfully but emphatically dissent.

Granted that the majority opinion is an artful effort to circumvent *Stone,* significantly it fails to accord any deference to the strong view expressed in *Stone,* based on deeply rooted public policy, that the exclusionary rule is unique and should not be invoked on habeas petitions under the circumstances described by Mr. Justice Powell in *Stone* and more fully in his concurring opinion in *Schneckloth v. Bustamonte,* 412 U.S. 218, 250 (1973). That view, in my opinion, applies with particular force to the circumstances of the instant case.

The majority opinion is a striking illustration of the mischief that results when one of the "inferior courts"[1] takes it upon itself to vent its displeasure with recent decisions of the United States Supreme Court. And the mischief is not mitigated

by the assertion that recent Supreme Court decisions have "complicated analysis in the instant case" and forced the majority to "struggle to understand the implications of the recent High Court cases". 568 F.2d at 844.

With deference, the only complication and confusion is that spawned by today's struggling majority opinion, the practical result of which will be to turn loose upon society a convicted first degree murderer now serving a life sentence. To suggest any other result would be utterly naive, in view of the virtual impossibility of determining probable cause *ten years* after the fact.

The radiations from today's majority opinion will have an impact far beyond the confines of this case and this Circuit. I wish I could believe they would be for the good of the Republic.

U.S. 1045, 93 S.Ct. 544, 34 L.Ed.2d 497 (1972). In the instant case, regardless of the adequacy under *Picard v. Connor, supra,* of appellant's trial-level constitutional objection, cf. *United States ex rel. Gibbs v. Zelker, supra,* 496 F.2d at 994 ("we would hardly insist that the [objection] . . . be raised in the state court in the specific garb of a federal constitutional question . . ."), there is no question that the precise Fourth Amendment issue was presented to the New York Court of Appeals on direct review and to three levels of the state court system in connection with appellant's *coram nobis* petition. It is clear that "the state courts [had] a fair chance [to] resolv[e] the constitutional problems of petitioner's case." *Id.*

10. It is unfortunate that in the rhetoric of the dissenting opinion our dissenting brother did not see fit to discuss, let alone analyze, how the State here "provided an opportunity for full and fair litigation of a Fourth Amendment claim" within the express language of *Stone v. Powell, see* Point I *supra.* Perhaps the dissent's fire is misdirected and it is the exclusionary rule and *Davis v. Mississippi, supra,* with which it is so upset, since they operate to exclude illegally obtained fingerprint evidence. As for setting free a "convicted first degree murderer" after ten years, we were unaware that there was a statute of limitations on the exercise of constitutional rights.

1. U.S.Const. art. III, § 1.